IN THE COMMONWEALTH COURT OF PENNSYLVANIA

California University of Pennsylvania, : 
                Petitioner : 
                : 
        v. : No. 104 C.D. 2017
                : ARGUED: June 5, 2017
Bill Schackner and Pittsburgh : 
Post-Gazette, : 
                Respondents : 


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JULIA K. HEARTHWAY, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY JUDGE HEARTHWAY          FILED: August 22, 2017


California University of Pennsylvania (University) petitions for review of that part of the January 3, 2017 final determination of the Office of Open Records (OOR), that pursuant to the Right-to-Know Law (RTKL),[1] found recoverable certain records relating to the University's investigation into the structural failure of an on-campus parking garage. We affirm in part and vacate and remand in part.

On September 14 and 19, 2016, Bill Schackner, a reporter for the Pittsburgh Post-Gazette (Requester), requested copies from the University of all correspondence from August 24, 2016 through September 19, 2016, relating to the Vulcan Parking Garage that was sent or received by "Cal U Parking and

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101 – 67.3104.

Transportation Office director Chris Johnston; Vice President for Administration and Finance Robert Thorn; Cal U President Geraldine Jones, Council of Trustees Chairman Larry Maggi and Associate Vice President for Communications and Public Relations Christine Kindl[;]" "Michael Kanalis, interim director of facilities management; Ed McSheffery, Chief of Police/Director of Public Safety and University Police; Michael Peplinski, Director, Facilities Management; David Wyne, Assistant Director Planning and Construction/Project Manager; Jeanne Singer, Work-Order Clerk; [and] Lorie Stewart, Administrative Assistant." (OOR Requests, 9/14/16 and 9/19/16.)

On November 10, 2016, the University responded partially denying Requester's requests. The University withheld correspondence relating to its investigation into the causes of the structure failure, its internal, predecisional deliberations, and its draft documents that related to web content and statements. The University provided Requester with other responsive items. Requester appealed to the OOR.

The University submitted a position statement to the OOR indicating that it released additional records to Requester, which it attached to its submission. The University also submitted a privilege log (Log) that identified 150 items it continued to withhold as exempt from disclosure pursuant to sections 708(b)(10)[2]

_____

[2] Section 708(b)(10), 65 P.S. § 67.708(b)(10), exempts from recovery certain predecisional deliberations.

2

and 708(b)(17)[3] of the RTKL and pursuant to its attorney-client privilege.[4]  In support of the exemptions, the University submitted an affirmation made under penalty of perjury from Robert Thorn, the University's Open Records Officer and Vice President for Administration and Finance (Thorn Affirmation).[5]

On January 3, 2017, the OOR issued its final determination.  The OOR determined that all responsive records that the University claimed were exempt under the noncriminal investigation exception to the RTKL, 65 P.S. § 67.708(b)(17), are not exempt because the University did:

> not cite to any legal authority demonstrating that it possess[es] legislatively granted fact-finding and investigative powers in this matter.  Instead, the University provided facts as to the steps it took after the structural failure in the parking garage.  This, alone, does not establish that the University has the authority to conduct noncriminal investigations as contemplated by Section 708(b)(17) [of] the RTKL.

(OOR Determination, at 6-7.)

Next, the OOR determined that of the 23 responsive records that the University claimed were exempt under the predecisional deliberations exception to

---

[3] Section 708(b)(17), 65 P.S. § 67.708(b)(17), exempts from recovery certain noncriminal investigations.

[4] We note that the Log has 154 lines, but the items begin on line 5 and continue to line 154.  (Log, at 1-2.)

[5] Requester submitted a statement arguing additional grounds, which it has abandoned. (*See* Requester's Brief, at 4 n.1.)

the RTKL, 65 P.S. § 67.708(b)(10)(i)(A), only eleven were exempt, record numbers 134, 135, 146-154. The remaining 12 were not exempt pursuant to section 708(b)(10)(i)(A) of the RTKL.

Finally, the OOR determined that the 9 responsive records[6] that the University claimed as exempt under the attorney-client privilege were not exempt because the University's Log and the Thorn Affirmation were conclusory and did not provide enough detail to establish the privilege.

The OOR ordered the University to provide all of the responsive records except numbers 134, 135, and 146-154. The University petitioned this Court for review.[7]

Under the RTKL, records in the possession of an agency are presumed to be public; however, that presumption does not apply if the record is privileged or exempt under section 708 of the RTKL, 65 P.S. §67.708.[8] "Exemptions from disclosure must be narrowly construed due to the RTKL's remedial nature …." *Office of Governor v. Scolforo*, 65 A.3d 1095, 1100 (Pa. Cmwlth. 2013). "An agency bears the burden of proving, by a preponderance of the evidence, that a

---

[6] The OOR states that there are 8 responsive records, then lists them as record numbers 56, 57, 58, 119, 120, 121, 122, 123, and 128. Thus, there are 9 responsive records.

[7] Our review under the RTKL is *de novo*, and we may adopt the agency's findings or substitute them with our own. *Bowling v. Office of Open Records*, 75 A.3d 453, 474 (Pa. 2013). Our scope of review under the RTKL is plenary. *Id.* at 476.

[8] *See* Section 305 of the RTKL, 65 P.S. § 67.305.

4

record is exempt from disclosure under one of the enumerated exceptions." *Brown v. Pennsylvania Department of State*, 123 A.3d 801, 804 (Pa. Cmwlth. 2015). "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to a more likely than not inquiry." *Delaware County v. Schaefer ex rel. Philadelphia Inquirer*, 45 A.3d 1149, 1156 (Pa. Cmwlth. 2012).

Initially, the University contends that the OOR erred in determining that certain records were not exempt as the product of a non-criminal investigation, pursuant to section 708(b)(17) of the RTKL, 65 P.S. §67.708(b)(17).[9] Section 708(b)(17)(ii) and (vi)(A) of the RTKL provide for the exemption from access by a requester of an agency's record "relating to a noncriminal investigation, including … [i]nvestigative materials, notes, correspondence and reports [and]…[a] record that, if disclosed, would. . .[r]eveal the institution, progress or result of an agency investigation…." 65 P.S. § 67.708(b)(17)(ii) and (vi)(A).

In construing the noncriminal investigation exemption in the context of section 708 of the RTKL, this Court has determined that the agency needs to show that it conducted an "investigation," which is defined as a "systematic or searching inquiry, a detailed examination, or an official probe." *Department of Health v. Office of Open Records*, 4 A.3d 803, 811 (Pa. Cmwlth. 2010). "[T]he agency asserting the [exemption] must show that a searching inquiry or detailed examination was undertaken as part of an agency's official duties. Stating that an investigation occurred … does not suffice." *Pennsylvania Department of*

---

[9] The OOR found that record Log numbers 5-119, 122-124, 126-127, and 129-132 were not exempt pursuant to section 708(b)(17) of the RTKL.

*Education v. Bagwell*, 131 A.3d 638, 659-60 (Pa. Cmwlth. 2015) (citations omitted). Additionally, when submitting affidavits to establish that a record is exempt, this Court has stated that the "affidavits must be detailed, nonconclusory and submitted in good faith…. Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned." *Scolforo*, 65 A.3d at 1103 (citation omitted).

The University presented the Thorn Affirmation and the Log in support of its contention that it is exempt pursuant to section 708(b)(17) of the RTKL. The Thorn Affirmation set forth that: (1) "there was a structural failure of the Vulcan Parking Garage (garage) on the University's campus that resulted in a slab of concrete falling to the ground"; (2) "In response to the event, the University took immediate steps to (a) secure the garage to avoid health and safety risks; (b) determine the cause of the failure; and (c) determine and evaluate its options for repair"; and (3) the University, to accomplish the above steps, conducted "an inquiry into the causes of the failure, whether it can be repaired, if so, how and at what cost." (Thorn Affirmation, ¶¶ 2-3 at 1.) The Thorn Affirmation stated that the University gathered, shared, reviewed, and analyzed "information through and among its employees and legal counsel, as well as the architect and contractor responsible for construction of the garage, and ultimately two consulting firms" that the University used to complete the investigation. (*Id.* ¶ 3 at 1.)

The University showed that it gathered information to determine the cause of the garage collapse. However, the University did not show how the steps

6

that it took following the structure failure amounted to a noncriminal investigation under section 708(b)(17) of the RTKL.

A "'noncriminal investigation' is an investigation 'conducted as part of an agency's official duties'" and here, there was no showing by the University that it had an official duty to investigate the cause of the structure failure. Merely performing routine duties, such as determining the cause of a structure failure and the cost of its repairs, does not amount to an official probe or an investigation.

In *Department of Public Welfare v. Chawaga*, 91 A.3d 257, 259 (Pa. Cmwlth. 2014), Chawaga requested a performance audit report from the Department of Public Welfare (DPW), pursuant to the RTKL. The DPW determined that the report was exempt as a noncriminal investigation. This Court determined that an audit report was not an 'official probe' because the "performance audit was not part of the [Department's] legislatively granted fact-finding or investigative powers; rather, the audit was ancillary to [the Department's] public assistance services. A contrary interpretation of an 'official probe' would craft a gaping exemption, under which any governmental information-gathering could be shielded from disclosure." *Id.*

The University further failed to prove in the Thorn Affirmation or the Log that it had an official duty, which went beyond its routine duties, to conduct an investigation into the collapse.[10] The University's inquiry was ancillary to its public safety services.

---

[10] In its brief, the University sets forth statutory authority for it to inspect and maintain its property and facilities, including parking garages. However, having the authority to inspect and

**(Footnote continued on next page…)**

7

> The public has the right to know who is performing services for the government agency, the scope of [those] services, the disputes concerning the scope of services, the costs relating to those services, and the resolution of disputes concerning the services. There was no danger of an invasion of personal privacy rights, public endangerment, or divulgence of secret information.

*See Johnson v. Pennsylvania Convention Center Authority*, 49 A.3d 920, 926 (Pa. Cmwlth. 2012). Thus, the OOR did not err in determining that the University failed to prove it was conducting a noncriminal investigation pursuant to the RTKL.

Next, the University contends that the OOR erred in determining that certain records were not exempt as pre-decisional deliberations pursuant to Section 708(b)(10)(i)(A) of the RTKL. The privilege log sets forth numbers 125, 133-154 for review under this section. The OOR found numbers 134-135, 146-154 exempt from disclosure. Thus, we address numbers 125, 133, 136-145 and, inasmuch as the University now argues that the record items it initially argued were exempt as noncriminal investigations should also be considered exempt as pre-decisional deliberations, we will address those record items as well.

Section 708(b)(10)(i)(A) of the RTKL provides for the exemption from access by a Requester for:

---

**(continued…)**

maintain the facilities is not tantamount to having the authority to conduct a 'noncriminal investigation' within the meaning of the RTKL.

[a] record that reflects:

> (A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. § 67.708(b)(10)(i)(A).

In order to establish this exemption, the University must show that the requested record: (1) is internal to a government agency; (2) contains information that is deliberative; and (3) reflects deliberations that occurred prior to a decision. *See Kaplin v. Lower Merion Township*, 19 A.3d 1209, 1214 (Pa. Cmwlth. 2011). Records are considered 'internal' "when they are maintained internal to one agency or among governmental agencies." *Smith ex rel. Smith Butz, LLC v. Pennsylvania Department of Environmental Protection*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 1431 C.D. 2016, filed May 8, 2017), slip op. at 24 (citation omitted).

To prove that the requested record contains deliberative information, the "agency must 'submit evidence of specific facts showing how the information relates to deliberation of a particular decision.' 'Only … confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice [are] protected as 'deliberative.' Factual information is not deliberative in character." *Id.* (*citing McGowan v. Pennsylvania Department of Environmental Protection*,

103 A.3d 374, 387-88 (Pa. Cmwlth. 2014); *Cary v. Department of Corrections*, 61 A.3d 367, 378-79 (Pa. Cmwlth. 2013).

Here, the OOR determined that certain records were not exempt from disclosure as predecisional deliberations because the Thorn Affirmation and attached Log were conclusory. The OOR determined that the University merely lists the subjects involved in the deliberations and does not detail the manner in which the withheld items relate to the University's future course of action. *See McGowan*, 103 A.3d 374, 384-85 (stating that the affidavit was sufficient because it detailed the information withheld that related to the internal deliberations, including draft documents to contemplate a future course of agency action); *Scolforo*, 65 A.3d at 1104 (stating that the affidavit was conclusory because it merely included a list of subjects to which internal deliberations have related, and did not permit the OOR to ascertain how disclosure of the entries would reflect the internal deliberations of those subjects). A review of the record reveals that the OOR was correct.

The Thorn Affirmation states that:

> the University began conducting an inquiry into the causes of the failure, whether it can be repaired, if so, how and at what cost by gathering, sharing, reviewing, and analyzing information through and among its employees and legal counsel, as well as the architect and contractor responsible for construction of the garage, and ultimately two consulting firms the University selected to continue and complete the investigation.

10

(Thorn Affirmation, ¶ 3, at 1.)  The Thorn Affirmation further states that the information it withheld "related to … University employees' confidential drafts, discussions, and deliberations regarding the form and presentation of informational communications to the campus community about the garage structural failure." (*Id.* ¶ 7, at 1.)

The Log reports the subject of each email as, among other things, "preliminary inquiry and investigation to causes of structure failure," "forwarding of information to B. Thorn re: inspection of garage," "forwarding of preliminary inquiry and investigation to causes of structure failure," "response and further discussion on damage to the Garage from original contractors," "exchanges between the University and Baker and Associates regarding preliminary analysis of the Garage failure," "forwarding of discussion between University and the engineering consultant, Baker & Associates, regarding preliminary analysis of the Garage failure," "coordination of investigators visiting site regarding preliminary analysis of the Garage failure," "exchanges between the University and Baker and Associates regarding preliminary analysis of the Garage failure," "internal predecisional discussion regarding invoicing," "test send of announcement to University students, faculty and staff regarding the temporary closing of the Garage," "internal exchange with Dir of Parking and University spokesperson to draft message to campus," "internal exchange regarding notice to campus about temporary closing of Garage," "internal exchange to finalize campus-wide announcement regarding the temporary closing of the Garage," "internal deliberations regarding announcement to campus about the Garage," "internal exchange regarding remarks for FS Convocation."  (Log, at 1-2.)

11

The above listed notations and statements from the Thorn Affirmation and Log are conclusory and provide an insufficient basis upon which to conclude that the records were predecisional deliberations. Almost all merely include a list of subjects that were discussed and none provide information permitting the OOR to ascertain how their disclosure would reflect the internal deliberations of those subjects. *See Scolforo*, 65 A.3d at 1104.

Finally, the University contends that the OOR erred in determining that certain records were not exempt pursuant to the attorney/client privilege. Section 102 of the RTKL excludes records that are privileged from recovery because they are not "public." 65 P.S. § 67.102. Section 102 of the RTKL also defines "privilege" as "[t]he attorney-work product doctrine, the attorney-client privilege or other privilege recognized by a court interpreting the laws of this Commonwealth." 65 P.S. § 67.102.

> In proving an attorney-client privilege, the agency must show:
>
> (1) that the asserted holder of the privilege is or sought to become a client; (2) that the person to whom the communication was made is a member of the bar of a court, or his or her subordinate; (3) that the communication relates to a fact of which the attorney was informed by the client, without the presence of strangers, for the purpose of securing an opinion of law, legal services or assistance in a legal matter; and (4) that the claimed privilege has not been waived by the client.

*Bagwell*, 131 A.3d at 656 (citation omitted). "The 'attorney-client' privilege protects from disclosure only those communications made by a client to his or her

12

attorney which are confidential and made in connection with the providing of legal services or advice." *Id.* at 656-57 (citation omitted). Further, the attorney-client privilege protects confidential communications between a client and an attorney that are "made for the purpose of obtaining or providing professional legal advice." *Id.* (Citations omitted.) The attorney-client privilege does not protect mere facts. *Id.* If the agency proves the first three prongs of the test, the burden shifts to the challenger to prove that the privilege was waived under the fourth prong. *Office of the Governor v. Davis*, 122 A.3d 1185, 1192 (Pa. Cmwlth. 2015). The attorney-client privilege protects only those who are seeking legal advice; it "does not extend to business advice or protect clients from factual investigations." *Id.*

The Log sets forth 9 records the University claims are exempt pursuant to the attorney-client privilege. The Thorn Affirmation sets forth that the records are "the University's privileged communications with its legal counsel regarding the investigation and related matters." (Thorn Affirmation, at 1.) The Log describes the subject matter of each email as follows:

> Nos. 56-58 - "communication among University legal counsel and consultants about the strategy for investigation"
>
> No. 119 - "circulating the initial draft of the letter of engagement with WJE."[11]
>
> Nos. 120-123 - "communication with University legal regarding securing contract with consultant."

---

[11] WJE is the forensic engineering firm.

13

No. 128 - "legal advice."

(Log, at 1-2.) The OOR found that these statements were conclusory and did not provide enough detail to establish the three prongs.[12] We agree.

However, we acknowledge the tension between the proof required to establish the applicability of the attorney-client privilege under section 102 of the RTKL and the important interests underlying attorney-client privilege.

> The attorney-client privilege that has deep historical roots in common law is designed 'to foster confidence between attorney and client.' It recognizes that 'full and frank communication between attorney and client is necessary for sound legal advocacy and advice, which serve the broader public interests of 'observance of law and administration of justice.''

*Dages v. Carbon County*, 44 A.3d 89, 92 (Pa. Cmwlth. 2012) (citations omitted). Our Supreme Court has ruled that "in Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney *or attorney-to-client* communications made for the purpose of obtaining or providing professional legal advice." *Id.* at 92-93 (citing *Gillard v. AIG Insurance Company,* 15 A.3d 44, 59 (Pa. 2011)).

> 'The purposes and necessities of the relation between a client and his attorney require, in many cases, on the part

---

[12] Because the Log and the Thorn Affirmation are conclusory, we are unable to determine whether the information passed between the attorney and his client in this case extended to business advice or was asserted to protect the University from a factual investigation. *See Davis*, 122 A.3d at 1192.

14

of the client, the fullest and freest disclosures to the attorney of the client's objects, motives and acts. This disclosure is made in the strictest confidence, relying upon the attorney's honor and fidelity. To permit the attorney to reveal to others what is so disclosed, would be not only a gross violation of a sacred trust upon his part, but it would utterly destroy and prevent the usefulness and benefits to be derived from professional assistance. Based upon considerations of public policy, therefore, the law wisely declares that all confidential communications and disclosures, made by a client to his legal adviser for the purpose of obtaining his professional aid or advice, shall be strictly privileged;—that the attorney shall not be permitted, without the consent of his client,—and much less will he be compelled—to reveal or disclose communications made to him under such circumstances.'

*Slater v. Rimar, Inc.,* 338 A.2d 584, 589 (Pa. 1975) (citation omitted).

Under the requirements of proof set forth in *Bagwell*, the Thorn Affirmation was inadequate to establish the University's claim of attorney-client privilege. However, the University now requests the records be examined *in camera* for the purpose of determining whether they are protected by the attorney-client privilege.

In *Office of Open Records v. Center Township,* this Court determined that upon a request from a party, the OOR has "the authority to conduct *in camera* review of documents to ascertain whether they constitute privileged material." 95 A.3d 354, 371 (Pa. Cmwlth. 2014). The availability of *in camera* review can be of critical importance when an agency seeks to protect attorney-client communications or attorney work product from disclosure. In some

15

circumstances, meeting the evidentiary burden set forth in *Bagwell* could force an agency to disclose information that could reveal aspects of contemplated litigation or legal strategy. In cases where such a danger might exist, *in camera* review is particularly appropriate to protect the important interests underlying the privilege.

The RTKL promotes the value of transparency in government by providing citizens with access to public documents. But that access is not unfettered. At times, public access to documents in the possession of a government agency could undermine other important established interests. In *City of Pittsburgh v. Silver*, 50 A.3d 296 (Pa. Cmwlth. 2012) (*en banc*), this Court determined that a RTKL request for correspondence relating to the potential settlement of pending litigation was beyond the jurisdiction of the OOR because the Supreme Court has exclusive jurisdiction over the practice of law. We stated that "[a]llowing anyone to make ongoing requests under the RTKL concerning all correspondence regarding settlement impermissibly intrudes into the conduct of litigation because it would lessen the frank exchange of information between the parties thereby adversely affecting the ability for litigation to settle." *Id.* at 300. To protect those interests, the *Silver* decision "created an exception to disclosure under the RTKL as a matter of judicial precedent." *Center Township*, 95 A.3d at 361.

This Court has previously stated that in some instances, *in camera* review of documents may be "a practical necessity for adjudicating issues of privilege." *Id.* at 370. Where an agency fears that attempting to meet the proof requirements of *Bagwell* might tend to disclose aspects of privileged communication, privileged work product, potential litigation or legal strategy, *in*

16

*camera* review by OOR should be an alternative to risking such disclosure by submitting evidence to an appeals officer. Because the University makes this request and the circumstances warrant it, we remand this matter to the OOR to conduct *in camera* review of the Log records numbered 56-58, 119-123, and 128 to determine whether the records should be exempt from disclosure based on the attorney-client privilege. *See Davis*, 122 A.3d at 1191-92, 94; and *Center Township*, 95 A.3d at 369-70.

Accordingly, we affirm in part and vacate and remand in part for further proceedings consistent with this opinion.

_____
JULIA K. HEARTHWAY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

California University of Pennsylvania, :
                Petitioner :
                                    :
            v. :    No. 104 C.D. 2017
                                    :
Bill Schackner and Pittsburgh :
Post-Gazette, :
                Respondents :

## O R D E R

AND NOW, this 22nd day of August, 2017, the order of the Office of Open Records in the above-captioned matter is affirmed in part and vacated in part, and this matter is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
JULIA K. HEARTHWAY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

California University of                    :
Pennsylvania,                              :
                    Petitioner              :
                                           :    No.  104 C.D. 2017
            v.                             :
                                           :    Argued:  June 5, 2017
Bill Schackner and                         :
Pittsburgh Post-Gazette,                   :
                    Respondents            :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


CONCURRING AND DISSENTING
OPINION BY JUDGE McCULLOUGH                 FILED:  August 22, 2017


            The thoughtful and well-written majority recognizes, as did the Office

of Open Records (OOR), that the affidavit and privilege log submitted by

California University of Pennsylvania (University) are insufficient to show that the

withheld documents satisfy the noncriminal investigation and predecisional

deliberations exemptions from disclosure, and, also, fail to establish that they are

protected under the attorney-client privilege.  Nonetheless, the majority remands to

the OOR to conduct *in camera* review of Document Nos. 56-58, 119, 120-123, and

128.   With the exception of Document No. 128, (describing an email as "legal

advice") the privilege log is devoid of any item which even remotely relates to the

attorney-client privilege, and as such, I would limit the remand and *in camera*

review to only this particular log entry.  Otherwise, based on this record, and with

respect to the remainder of the documents and/or correspondence pertaining to communication with "consultants," the remand effectively grants the University an unwarranted "second bite at the apple." *Pennsylvania Turnpike Commission v. Murphy*, 25 A.3d 1294, 1298 (Pa. Cmwlth. 2011); *accord Pennsylvania State Police v. Muller*, 124 A.3d 761, 764-65 (Pa. Cmwlth. 2015).

As aptly noted by Bill Schackner and the Pittsburgh Post-Gazette (Requesters), neither the privilege log nor the affidavit details any occupation or position of the persons listed on the log, leaving the Court to surmise whether the individuals are employees, contractors, architects, or some other type of "consultant." Specifically, the privilege log asserts as to Document Nos. 56, 57, and 58 that they were shared "among University legal counsel and consultants[.]" (Privilege Log at 1.) However, this assertion, alone, is self-defeating and removes it unequivocally from protection under the attorney-client privilege because it clearly constitutes a communication with a third-party or "stranger." *See Joe v. Prison Health Services, Inc.*, 782 A.2d 24, 31 (Pa. Cmwlth. 2001) ("[O]nce the attorney-client communications have been disclosed to a third party, the privilege is deemed waived."). Similarly, Document No. 119 merely describes the content of an email as "circulating the initial draft of the letter of engagement with WJE," an engineering firm, and Documents Nos. 120-123 simply state that they evidence "communication with University legal regarding securing contract with consultant." (Privilege Log at 1-2.) Neither of these assertions provide a basis upon which to conclude that the attorney-client privilege is applicable.

Although Document No. 128 contains only the words "legal advice," which is clearly conclusory under the standard in *Office of the Governor v. Scolforo*, 65 A.3d 1095, 1104 (Pa. Cmwlth. 2013) (en banc) ("Because this

Affidavit is not detailed, but rather conclusory, it is not sufficient, standing alone, to prove that the . . . entries are exempt from disclosure."), I would allow a limited remand on this item in light of the common law concerns raised by the majority. In all other respects, I would respectfully affirm the OOR's decision.

_____

PATRICIA A. McCULLOUGH, Judge