IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Bergere,                              :
                    Petitioner               :
                                             :
          v.                                 :        No. 269 C.D. 2024
                                             :        Argued: December 9, 2024
Pennsylvania Department of                   :
Community and Economic                       :
Development (Office of Open                   :
Records),                                    :
                    Respondent               :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge (P)
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                     FILED:  January 30, 2025


          Timothy Bergere (Requester) petitions for review of a final
determination of the Office of Open Records (OOR) that affirmed the Pennsylvania
Department of Community and Economic Development's (Department) production
of records with redactions made to preserve the attorney-client privilege.  Requester
argues that the OOR erred because the Department's certification and supplemental
attestation did not provide sufficient factual information to establish the privilege, as
required under the Right-to-Know Law (RTKL).[1]  After review, we affirm.

## Background

          Steve Gidumal and Virtus Capital Advisors, LLC (collectively,
Gidumal) own property at 649-651 Headquarters Road in Ottsville, Pennsylvania
(Property).  In 2022, Gidumal filed a petition to quiet title with the Board of Property
to challenge the Pennsylvania Department of Transportation's (PennDOT) claim to

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

have a right-of-way, a slope easement, and a temporary construction easement over the Property. On April 24, 2023, the Board of Property granted summary judgment to Gidumal, holding that the easements claimed by PennDOT were invalid. However, on April 25, 2023, the Board of Property vacated its order of April 24, 2023, explaining that it "was not the document approved by the Board at its meeting on April 20, 2023." Board of Property Order, 4/25/2023; Reproduced Record at 37 (R.R. __).[2] The Board dismissed Gidumal's quiet title petition as moot because PennDOT had recently filed a declaration of taking to condemn a right-of-way, a slope easement, and a temporary construction easement over the Property that would "secure the very same easements" that had been the subject of Gidumal's quiet title action. Board of Property Order, 4/25/2023, at 2; R.R. 33.

Seeking information on the *volte face* by the Board of Property on the quiet title action, Requester submitted a written request to the Department for the following records:

> 1. I request electronic communications, including but not limited to text messages, phone call recordings, records of calls, and/or emails exchanged between Shawn P. Kerns, Jason E. McMurry, Thomas P. Howell, Jason Boyer (collectively "the Board members"), or between any staff members of the Board of Property, after the decision issued by the State Board of Property on April 24, 2023 in *Gidumal v. Pennsylvania [Department] of [Transportation]*, BOP Decision No. BP 2022-002 (April 2023) and before the decision issued on April 25, 2023 in the same matter, and which relate to either decision.
>
> 2. I request written, typed, or otherwise transcribed physical writings, transcripts, notes, memoranda, or messages produced by or exchanged between Shawn P. Kerns, Jason E. McMurry, Thomas P. Howell, Jason Boyer (collectively "the Board

---

[2] The reproduced record does not follow PA.R.A.P. 2173, which requires that the pages of the record be numbered separately in Arabic figures followed by a small a, thus 1a, 2a, 3a, etc.

2

members"), or between any staff members of the Board of Property, after the above referenced decision issued by the State Board of Property on April 24, 2023 and before the above referenced decision issued on April 25, 2023, and which relate to either decision. This request should not be construed to extend to notes and working papers strictly for personal use.

3. I request records relating to the *postdecisional* deliberations by the Board members, or by Board of Property staff members, following and related to their issued opinion on April 24, 2023 in the matter referenced above. This request should not be construed to include internal *predecisional* deliberations as defined in 65 [P.S.] §[67.708(b)](10)(i)(A) (West).

4. I request records relating to the *postdecisional* deliberations by the Board members, or by Board of Property staff members, following their issued opinion on April 25, 2023 in the matter referenced above and relating to either their April 24, 2023 decision or their April 25, 2023 decision. This request should not be construed to include internal *predecisional* deliberations as defined in 65 [P.S.] §[67.708(b)](10)(i)(A) (West).

R.R. 8.

The Department produced approximately 163 pages of records in response to the request. With that production, the Open Records Officer, Eileen Quinn, provided a certification to Requester attesting to a good faith search for the records requested and their complete production. The certification then stated as follows:

9. Certain emails included with the responsive records were redacted per the attorney-client privilege.

10. As to the claim of attorney-client privilege in the responsive records:

(a) The asserted holders of the attorney-client privilege, namely the Board of Property and its administrators, are clients of legal counsel, Thomas Blackburn, Esquire;

(b) The people to whom the referenced email communications were made are (1) Thomas Blackburn,

3

Esquire, (2) the Board Members of the Board of Property, and (3) administrators of the Board of Property;

(c) The referenced email communications relate to facts of which legal counsel was informed by his client, without the presence of strangers, for the purpose of securing assistance in a legal matter (specifically, the drafting and finalization of an Order); and

(d) The attorney-client privilege has been claimed and not waived by the client.

Quinn Certification ¶¶9-10; R.R. 16.

Requester appealed to the OOR. On February 12, 2024, the OOR issued a final determination that denied Requester's appeal. The OOR explained that the evidence was undisputed that Blackburn provides legal representation to the Board of Property, its members, and its administrators. The communications in question "were for the purpose of obtaining legal advice and guidance concerning the drafting and finalization" of a Board adjudication. OOR Final Determination at 7; R.R. 301. Further, Requester offered no evidence that the emails were shared with third parties; that the legal advice was for the purpose of committing a crime or tort; or that the asserted attorney-client privilege had been waived.

The OOR focused on the subject matter line in the redacted emails, which included such references as "final adjudication" and "Steven Gidumal and Virtus Capital Advisors, LLC v. PennDOT . . . Final Order and Adjudication." R.R. 41-42. The OOR inferred "that the redacted communications consist of discussions between legal counsel and Board members/administrators that, more likely than not, involve the solicitation and receipt of legal advice and guidance regarding the issuance of relevant Board of Property Orders, which concerned the pending

4

administrative matter between [] Gidumal and PennDOT." OOR Final Determination at 7 n.4; R.R. 301.[3]

Requester then petitioned this Court for review of the OOR's final determination.

**Appeal**

On appeal,[4] Requester raises one issue. He contends that the OOR erred in denying his appeal because the Department's invocation of the attorney-client privilege was deficient or, at a minimum, the OOR should have reviewed the redacted emails *in camera* as the first step in determining the validity of the Department's privilege claim.

**Applicable Legal Principles**

The RTKL is "remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions[.]" *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010), *aff'd*, 75 A.3d 453 (Pa. 2013). "[T]he enactment of the RTKL in 2008 was a dramatic expansion of the public's access to government documents." *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 381 (Pa. 2013).

> A "record" that is subject to the RTKL is defined as follows:
>
> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term

---

[3] The OOR also affirmed the Department's redactions of personal email addresses and personal phone numbers under Section 708(b)(6) of the RTKL, 65 P.S. §67.708(b)(6). Final Determination at 2. Requester has not appealed this part of the final determination.

[4] Our standard of review of a final determination of the OOR is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

5

includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

Section 102 of the RTKL, 65 P.S. §67.102. A "record" is generally presumed to be public unless "protected by a privilege." *See* Section 305(a)(2) of the RTKL, 65 P.S. §67.305(a)(2) ("A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if: . . . (2) the record is protected by a privilege[.]"). Additional support for the principle that privileged information is not subject to disclosure is provided in the RTKL's definition of "public record" as: "A record, including a financial record, of a Commonwealth or local agency that: (1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) *is not protected by a privilege*." 65 P.S. §67.102 (emphasis added). In turn, "privilege" is defined as "[t]he attorney-work product doctrine, *the attorney-client privilege*, the doctor-patient privilege, the speech and debate privilege or other privilege recognized by a court interpreting the laws of this Commonwealth." *Id*. (emphasis added). Whether the attorney-client privilege protects an agency's information from disclosure is a question of law. *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014).

In *Levy*, 65 A.3d at 368-69, our Supreme Court addressed the attorney-client privilege in the context of the RTKL. Notwithstanding the deep roots of the attorney-client privilege in the common law, the Supreme Court observed that this privilege is "in tension" with the RTKL's goal of government transparency. *Id.* at 368. First, not all information passed between client and attorney is privileged; only communications that relate to the legal advice sought by the client are privileged. *Id.* at 368-69. Second, the applicability of the attorney-client privilege does not turn

6

on the category of the information, such as a client's identity or address, or the category of a document, such as an invoice or fee agreement. Rather, the relevant question is whether the records' content will result in disclosure of information otherwise protected by the attorney-client privilege.

With these principles in mind, we address Requester's appeal.

**Analysis**

Requester argues that the Department's assertion of the attorney-client privilege was not factually supported. In both its certification and supplemental attestation, the Department merely recited the elements of the attorney-client privilege, to which it added "Blackburn," the "Board of Property," and "final adjudication." Requester Brief at 13. Requester explains "[t]he Department's bizarre conduct in the underlying matter before the Board of Property, coupled with its clear reaction to [Requester's] request for clarification, at least raise the possibility that the assertion of privilege may be overly broad or unjustified." *Id*. at 14. In any case, the OOR should have conducted an *in camera* review or required the Department to submit a privilege log before rendering its final decision on Requester's appeal.

The Department responds that the emails in question were exchanges between legal counsel and members and administrators of the Board of Property seeking legal advice on the drafting and finalization of an adjudication. Quinn's sworn certification and supplemental attestation established all the elements needed to show that the redactions were necessary to preserve the attorney-client privilege. The Department also contends that the OOR's decision aligns with previous determinations of the OOR in circumstances similar to this request. *See In the Matter of Cathy Gusler v. Jefferson Township*, OOR Dkt. No. AP 2009-0367, 2009

7

WL 6503766 (filed June 5, 2009);[5] *In the Matter of Simon Campbell v. Souderton Area School District*, OOR Dkt. No. AP 2023-0188, 2023 WL 2733121 (filed March 28, 2023).[6]

To establish the attorney-client privilege, the party claiming the privilege must demonstrate the following facts:

> (1) The asserted holder of the privilege is or sought to become a client;
>
> (2) The person to whom the communication was made is a member of the bar of a court, or his subordinate;
>
> (3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort; and
>
> (4) The privilege has been claimed and is not waived by the client.

*Couloumbis v. Senate of Pennsylvania*, 300 A.3d 1093, 1101-02 (Pa. Cmwlth. 2023) (quoting *Pennsylvania Department of Education v. Bagwell*, 114 A.3d 1113, 1123-24 (Pa. Cmwlth. 2015)). "The attorney-client privilege protects communications from the client to their attorney, and from the attorney to their client." *Mancini v. County of Northampton Personnel Appeals Board* (Pa. Cmwlth., No. 1292 C.D. 2022, filed June 7, 2024) (unreported),[7] slip op. at 9 (citing *Bagwell*, 114 A.3d at

---

[5] In *In the Matter of Cathy Gusler*, the OOR concluded that the township's privilege log provided sufficient factual information to establish its asserted attorney-client privilege.

[6] In *In the Matter of Simon Campbell*, after reviewing the records *in camera*, the OOR determined that the school district's redactions were authorized by reason of the attorney-client privilege because the redacted information related to facts shared with counsel by the school district for the purpose of securing a legal opinion or analysis.

[7] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

1124). "The attorney-client privilege is intended to foster candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client." *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d at 216. A government agency is entitled to assert the attorney-client privilege. *Heavens v. Pennsylvania Department of Environmental Protection*, 65 A.3d 1069, 1076-77 (Pa. Cmwlth. 2013).

To meet its burden of proving that a record need not be disclosed under the RTKL, the agency may establish facts with affidavits or attestations.[8] *Couloumbis*, 300 A.3d at 1104. Additionally, a privilege log listing "the date, record type, author, recipients, and a description of the withheld record[] can serve as sufficient evidence to establish an exemption, especially where the information in the log is bolstered with averments in an affidavit." *McGowan*, 103 A.3d at 381. Importantly, "the attorney client-privilege must be asserted with respect to each question sought to be avoided or document sought to be withheld, rather than as a single, blanket assertion." *Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 474 (Pa. Cmwlth. 2018) (quotation omitted). If the party sustains its burden on the attorney-client privilege, the burden shifts to the opposing party to prove an applicable exception to the privilege. *Id.*

Here, the Department redacted certain emails on the basis of attorney-client privilege. Those emails were:

---

[8] Our Court has explained:

> Affidavits are the means through which a governmental agency . . . justifies nondisclosure of the requested records under each exemption upon which it relied upon. The affidavits must be detailed, nonconclusory, and submitted in good faith . . . . Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.

*McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014) (quotation omitted).

An email dated April 24, 2023, at 3:20 p.m. from Eileen Quinn to Thomas Blackburn, Jason McMurry, and Robert Teplitz regarding Docket – Steven Gidumal and Virtus Capital Advisors, LLC v. PennDOT 2022-0002.

An email dated April 24, 2023, at 3:20 p.m. from Eileen Quinn to Jason McMurry and Thomas Blackburn regarding Gidumal and Virtus Capital v. PennDOT BP 2022-0002 final adjudication.pdf.

An email dated April 25, 2023, at 11:31 a.m. from Eileen Quinn to Thomas Blackburn regarding Gidumal, et al. v. PennDOT, No. BP-2022-0002 – Request for Clarification of Final Adjudication and Order.

An email dated April 25, 2023, at 11:59 a.m. from Thomas Blackburn to Eileen Quinn, Jason McMurry and Robert Teplitz regarding Gidumal, et al. v. PennDOT, No. BP-2022-0002 – Request for Clarification of Final Adjudication and Order.

An email dated April 25, 2023, at 12:06 p.m. from Jason McMurry to Eileen Quinn and Thomas Blackburn regarding Gidumal and Virtus Capital v. PennDOT order vacating adjudication and order.

An email dated April 25, 2023, at 12:08 p.m. from Jason McMurray to Eileen Quinn and Thomas Blackburn regarding Gidumal and Virtus Capital v. PennDOT final memo order dismissing as moot.pdf.

An email dated April 25, 2023, at 12:08 p.m. from Jason McMurry to Thomas Blackburn, Eileen Quinn and Robert Teplitz regarding Gidumal, et al. v. PennDOT, No. BP-2022-0002 – Request for Clarification of Final Adjudication and Order.

An email dated April 25, 2023, at 12:57 p.m. from Robert Teplitz to Thomas Blackburn, Eileen Quinn and Jason McMurry regarding Gidumal, et al. v. PennDOT, No. BP-2022-0002 – Request for Clarification of Final Adjudication and Order.

An email dated April 25, 2023, at 1:07 p.m. from Eileen Quinn to Thomas Blackburn, Jason McMurry and Robert Teplitz regarding Gidumal, et al. v. PennDOT, No. BP-2022-0002 – Request for Clarification of Final Adjudication and Order.

An email dated April 25, 2023, at 1:15 p.m. from Jason McMurry to Eileen Quinn, Thomas Blackburn and Robert Teplitz regarding Gidumal, et al. v. PennDOT, No. BP-2022-0002 – Request for Clarification of Final Adjudication and Order.

R.R. 156, 170, 212, 226, 238, 243, 250, 253, 267, and 290.

Quinn provided an affidavit explaining why the emails were redacted. Before the OOR, Quinn provided a supplemental attestation, wherein she provided additional details about the redacted emails:

> 5. The emails are communications between Board of Property Board Members ("Board"), Board of Property administrators ("administrators"), and Board of Property legal counsel, Thomas Blackburn, Esquire.
>
> 6. The emails consist of (a) Board and administrators supplying information to and *seeking legal guidance from Mr. Blackburn in connection with the drafting and finalization of a Board of Property Order* and (b) Mr. Blackburn responding to the Board and administrators' information supplied and requests for legal guidance in connection with the drafting and finalization of a Board of Property Order.
>
> 7. The emails were not shared with individuals outside of the Board, Board administrators, and Mr. Blackburn.
>
> 8. The Board and Board administrators claim the attorney-client privilege in connection with the emails and do not waive such privilege.
>
> 9. *To supply any further detail about the emails than what has been provided in this Attestation and in the Certification Affidavit would violate the attorney-client privilege being claimed by providing the substance of the legal advice sought and the legal advice supplied therein*.

Quinn Supplemental Attestation, 12/28/2023, ¶¶5-9; R.R. 86 (emphasis added).

Requester acknowledges that Blackburn is legal counsel to the Board of Property. The certification and supplemental attestation establish that the

11

members and administrators of the Board of Property sought Blackburn's legal guidance on the drafting of and decision on a final adjudication.

Requester argues that this is not enough information to establish the attorney-client privilege. He directs the Court to *California University of Pennsylvania v. Schackner*, 168 A.3d 413 (Pa. Cmwlth. 2017) (*California University*). There, the requester sought copies of all correspondence relating to the Vulcan Parking Garage from the university between August 24, 2016, and September 19, 2016. In its response, the university withheld, as privileged, correspondence related to its investigation into the causes of the structure failure, its internal predecisional deliberations, and its draft documents that related to web content and statements. In support, the university provided a privilege log that identified nine records that were withheld on grounds of the attorney-client privilege. The log described the subject of each of the nine emails as follows:

> Nos. 56-58 --"communication among University legal counsel and consultants about the strategy for investigation"
>
> No. 119 -- "circulating the initial draft of the letter of engagement with [the forensic engineering firm]."
>
> Nos. 120-123 -- "communication with University legal regarding securing contract with consultant."
>
> No. 128 -- "legal advice."

*California University*, 168 A.3d at 421-22 (citation and footnote omitted).

The OOR concluded that the university did not establish that the requested records were protected by the attorney-client privilege. The OOR reasoned that the university's privilege log and affidavit were conclusory and did not provide enough detail to establish the privilege. On appeal, this Court agreed that the affidavit was inadequate to establish the university's claim of privilege.

12

In so holding, we conceded that it is a challenge to provide enough detail to establish the privilege without also disclosing the protected information. We stated that "in some instances, *in camera* review of documents may be a practical necessity for adjudicating issues of privilege." *California University*, 168 A.3d at 423 (quotation omitted). An *in camera* review by OOR can resolve the dilemma. Noting that the university made a request to have the records examined *in camera* to determine whether they were protected by the attorney-client privilege, we remanded the matter to the OOR to conduct *in camera* review of the nine records withheld by the university.

Requester argues that Quinn's certification and supplemental attestation "provide less detail than those descriptions" in *California University*. We disagree. Quinn provided more specificity than "legal advice" and "strategy for investigation," as offered in *California University*. Quinn identified the specific legal controversy before the Board of Property and attested that the communications concerned the Board's adjudication in that matter. Quinn Certification ¶¶3-10; R.R. 15-16. Further, no single document was withheld in its entirety on the basis of attorney-client privilege. Quinn Certification ¶¶7-8; R.R. 15. The documents produced by the Department contain enough unredacted information to identify the privileged nature of information that was redacted. Any "further detail about the emails than what has been provided" in Quinn's certification and attestation would essentially provide "the substance of the legal advice sought and the legal advice supplied therein." Quinn Supplemental Attestation, 12/28/2023, ¶9; R.R. 86. In effect, the Department produced the functional equivalent of a privilege log.

The "purpose of *in camera* review and the production of a privilege log is to provide the requester and/or the Court with enough information to determine

whether withholding or redacting was appropriate." *Janesch v. Pennsylvania House of Representatives*, 299 A.3d 1030, 1043 (Pa. Cmwlth. 2023). Here, the documents produced together with the Quinn affidavit and attestation were sufficient to allow the OOR to make this determination. Accordingly, we reject Requester's assertion that an *in camera* review of the Department's redacted emails was also required.

## Conclusion

The Department provided sufficient factual information to support its claim of the attorney-client privilege. Accordingly, we affirm the final determination of the OOR.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Timothy Bergere,         :
        Petitioner         :
        :
        v.         :     No. 269 C.D. 2024
        :
Pennsylvania Department of         :
Community and Economic         :
Development (Office of Open         :
Records),         :
        Respondent         :

# **O R D E R**

AND NOW, this 30th day of January, 2025, the final determination of the Office of Open Records, dated February 12, 2024, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita