# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bill Schackner and The Pittsburgh     :
Post-Gazette,     :
                Petitioners     :
    :
           v.     :    Nos. 785 C.D. 2019
    :          786 C.D. 2019
Edinboro University,     :
                Respondent     :


Edinboro University of Pennsylvania,     :
                Petitioner     :
           v.     :    No.  809 C.D. 2019
    :
Bill Schackner and The     :    Argued: February 10, 2020
Pittsburgh Post-Gazette,     :
                Respondents     :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                    FILED: April 27, 2020

      In these consolidated matters, Bill Schackner of The Pittsburgh Post-Gazette (Requester) sought records from Edinboro University of Pennsylvania (University) about its attendant care/disability services pursuant to the Right-to-Know Law (RTKL).[1] The University disclosed records with redaction and withheld others, asserting various exceptions, some of which the Office of Open Records (OOR) upheld. Requester argues OOR abused its discretion in not requesting an exemption log and challenges the evidence as insufficient overall. Requester also contends OOR erred in construing and applying the noncriminal investigative and predecisional deliberative exceptions.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

The University filed a cross-petition for review as to OOR's analysis of specificity and the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. §1232g. Upon review, based on the record OOR developed as the fact-finder, we affirm as modified as to disclosure of communications with A Bridge to Independence (ABI) before it became the University's attendant care contractor, as further explained below.

## I. Background

In December 2018, Requester submitted a RTKL request to the University seeking the following (with emphasis added):

> Copies of all correspondences, including but not limited to electronic, sent or received from Sept. 15, 2018 through today (Dec. 18, 2018) that include (or make reference to) any of the following terms, programs and individuals:
>
> Attendant care; attendant care program; [ABI]; Office of Students with Disabilities; Office for Accessibility Services; Jack Hewitt; wheelchair; disability; disabilities; H. Fred Walker; Pennsylvania Office of Vocational Rehabilitation (OVR); New York Office for Vocational Rehabilitation; Frank Brogan; Ronald Wilson; Adult Career and Continuing Education Services-Vocational Rehabilitation (ACCES-VR);
>
> And were sent or received by the following individuals:
>
> Michael Hannan, interim president; Stacie Wolbert, associate vice president for student affairs; Angela Burrows, assistant vice president for communications; Jim Fisher, interim provost; Daniel Greenstein, chancellor of the State System of Higher Education and any of his staff; Ronald Wilson, director of social equity; Pertrina Marrero, director of social equity.

Reproduced Record (R.R.) at 9a-10a (September Request). Requester submitted another request seeking identical information, but corresponding to the timeframe of March 1, 2018, through May 3, 2018 (March Request) (collectively, the Requests).

2

After invoking an extension, and as negotiated with Requester, the University provided responsive records on a rolling basis in a series of productions of bates-labeled records through January and February 2019. Records bates-labeled 000001-000078 and 000169-000458 pertained to the September Request and records bates-labeled 000079-000168 pertained to the March Request.[2] Of significance, during its search for responsive records, the University gleaned that 3,168 records "may potentially be responsive" to the Requests. R.R. at 625a (Counsel Attestation).

Pursuant to Requester's extension to complete its review of responsive records, on February 27, 2019, the University produced the final batch of records with redactions. R.R. at 407a-558a (Ex. 17, 000307-000557). Relevant here, the University denied the Requests in part, withholding records under multiple exceptions in Section 708(b) of the RTKL, 65 P.S. §67.708(b): (b)(1) (relating to loss of federal funds under FERPA); (b)(5) (relating to medical records); (b)(6) (relating to personal identifiers); (b)(7) (relating to personnel records); (b)(9) (relating to drafts); and (b)(10)(1) (relating to predecisional deliberations). R.R. at 396a. In addition, the University asserted the Requests were insufficiently specific under Section 703 of the RTKL in that a keyword search for "Ronald Wilson" did not indicate a subject matter. Notably, Wilson was not only the Director of Social Equity as stated in the Requests; he held other roles during the relevant timeframe, including Title IX Coordinator. Nonetheless, the University "interpreted the [Requests] to seek communications between the identified individuals that are related to the attendant care program." *Id.*

---

[2] The University redacted email addresses under Section 708(b)(6) of the RTKL, and made other redactions pursuant to Section 708(b)(1)(i) of the RTKL, asserting its disclosure would result in the loss of federal funding. *See* Reproduced Record (R.R.) at 141a. Later, the University disclosed additional records with redactions based on these two grounds as well as the predecisional deliberative exception in Section 708(b)(10) of the RTKL. R.R. at 206a (Ex. 12).

Requester appealed the partial denials of both Requests to OOR. In the appeal, Requester also requested an exemption log correlating the exceptions to the records redacted or withheld. Based on the similarity in the Requests, and with the parties' consent, OOR consolidated the two appeals.

OOR developed the record, inviting both parties to submit evidence and supporting argument. However, OOR did not require the University to submit an exemption log.[3] OOR also did not request *in camera* review or hold a hearing.

The University submitted attestations from its Open Records Officer (ORO) and its Executive Director for Information Technologies Services regarding their search for records, and its legal counsel, Molly Harris (Counsel), regarding her review and compilation of responsive records. After receiving position statements and attestations from the University, OOR sought additional evidence regarding the noncriminal investigation exception. The University provided another attestation of Counsel and one of Ronald Wilson about his investigations into sexual misconduct complaints in accordance with federal law. R.R. at 650a-51a (Wilson Attestation).

Based on the submissions, deeming the Requests sufficiently specific, OOR granted the appeal in part and denied it in part. *See Schackner v. Edinboro Univ.*, OOR Dkt. No. AP 2019-0404 (issued May 31, 2019) (Final Determination). In granting the appeal, OOR required disclosure of records: (1) withheld/redacted based on FERPA; and (2) sent/received between the University and ABI, its attendant

_____

[3] The term "exemption log," often used interchangeably with the term "privilege log," typically "lists the date, record type, author, recipients, and a description of the withheld record or redaction." *McGowan v. Dep't of Envtl. Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014).

care contractor, regarding attendant care services.[4] Relevant here, it reasoned emails to/from ABI qualified as internal to the University both before *and* after ABI became its contractor. OOR upheld the University's denial as to the remaining exceptions.

Requester petitions for review, arguing OOR abused its discretion in developing the record and erred in construing and applying certain RTKL exceptions. The University cross-petitions for review challenging OOR's analysis of specificity and the Final Determination to the extent it directed disclosure.

## II. Issues

These appeals present both legal and evidentiary issues for our review. As a matter of law, Requester challenges whether: (1) emails sent to/from a contractor are "internal" so as to allow protection under the predecisional deliberative exception in Section 708(b)(10) of the RTKL; and (2) the University conducted a qualifying noncriminal investigation pursuant to Section 708(b)(17) of the RTKL. The University questions OOR's analysis of FERPA under Section 708(b)(1), and its application of the multi-factor assessment for specificity.

Requester also questions the sufficiency of the evidence and asserts OOR abused its discretion in not requiring the University to submit an exemption log. To clarify the application of certain exceptions, Requester seeks a limited remand to OOR to direct the creation and production of an exemption log as to Section 708(b)(5) (for medical/disability status) and (b)(6) (for personal identifiers) only.

---

[4] OOR properly applied the predecisional deliberative exception in Section 708(b)(10) of the RTKL to protect emails exchanged among the University's leadership team regarding policy. As to emails between the University and ABI, OOR explained that emails discussing ABI's location on campus were not protected because they did not deliberate a policy or provision of services.

## III. Discussion

In RTKL appeals involving a Commonwealth agency, this Court may rely on the record developed before the appeals officer. *Dep't of Labor & Indus. v. Heltzel*, 90 A.3d 823 (Pa. Cmwlth. 2014) (*en banc*). Our review over matters of law is plenary. *Id.* The parties here do not enlist, and we do not exercise, our fact-finding function. Therefore, we assess this matter in our appellate capacity.

## A. Specificity

We begin our analysis with the University's challenge to the specificity of the Requests. The University argues the Requests did not adequately define the subject matter such that it is confined to only records documenting agency activities.[5] In particular, it objected to Requester using a name (Ronald Wilson) as both a sender/recipient *and* a keyword because all emails to or from that person could be responsive.

Section 703 of the RTKL provides a baseline for specificity, stating: "A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested …." 65 P.S. §67.703. Case law further refined the specificity review as a multi-factor assessment. *See Office of the Governor v. Engelkemier*, 148 A.3d 522 (Pa. Cmwlth. 2016); *Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Cmwlth. 2015).

In assessing specificity, a decision-maker "examin[es] the extent to which the request sets forth[:] (1) the subject matter of the request; (2) the scope of

---

[5] In pertinent part, Section 102 of the RTKL defines a "record" as: "Information … that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency." 65 P.S. §67.102.

documents sought; and (3) the timeframe for which records are sought." *Engelkemier*, 148 A.3d at 530. *See also Carey v. Dep't of Corr.*, 61 A.3d 367, 372 (Pa. Cmwlth. 2013) ("Each [part of the request] specifies a subject matter, a finite timeframe and seeks a discrete group of documents, either by type, as communications, or by recipient …. [Thus,] [t]he [r]equest is sufficiently specific …."). However, we do not assess these factors in isolation; rather, we consider them in combination and with the benefit of the entire record developed in the appeals officer stage. *Engelkemier.*

Applying the multi-factor test here, the University does not dispute that the Requests identified the type of records (*i.e.,* correspondence), recipients and discrete timeframes. The timeframes to which the September Request and the March Request pertain are objectively reasonable, the former spanning 95 days whereas the latter spans 64 days. *See, e.g.*, *Baxter v. Easton Area Sch. Dist.*, 35 A.3d 1259 (Pa. Cmwlth. 2012) (deeming request for emails spanning 30 days sufficiently specific).

With regard to requests for emails, like the Requests before us, the subject matter is indicated by the keywords and senders/recipients identified by a requester. In such cases, the balancing of factors is informed by the records an agency disclosed. *Engelkemier.* Stated differently, while keywords, on their face, may not identify a transaction or activity of the agency, we weigh the keywords in the context of the RTKL request and the records compiled in response. *Id.*; *Baxter.*

Moreover, particularly with requests seeking emails, this Court has found an agency's ability to compile records in response persuasive. *Baxter.* But *see Montgomery Cty. v. Iverson*, 50 A.3d 281 (Pa. Cmwlth. 2012) (*en banc*)

7

(agency's ability to respond does not render request specific). From its disclosure of hundreds of records, it is evident the University could discern what records were sought when construing the Requests as confined to attendant care services.

Viewing the combination of senders and recipients, who were or are University employees, the Requests contemplate only "records" as defined by the RTKL. The senders and recipients are finite, and the subject matter is indicated in the keywords, including attendant care, disabilities, accessibility and rehabilitation.

Here, the University challenges the keywords when the term was simply a name, *i.e*., Ronald Wilson. We anticipate that use of a name as a search term, as well as a sender/recipient, may include records that are not germane to University activities. However, combined with the fact that the Requests identified 15 senders/recipients over a reasonable timeframe, the keywords provide sufficient parameters to enable the University's response. It bears emphasis that the University was able to compile hundreds of responsive records using the search terms. To the extent the balancing of these factors presents a close call, we defer to the fact-finder. As such, we affirm OOR's conclusion that the Requests were sufficiently specific, and confirm the University must disclose responsive public records under the RTKL.

## B. Sufficiency of Evidence
### 1. Form - Exemption Log

Before turning to the merits of the asserted exceptions, we address Requester's contention that OOR abused its discretion in developing the record prior to issuing the Final Determination when it did not request an exemption log.

"[T]he RTKL grants appeals officers wide discretion with respect to procedure ...." *Bowling v. Office of Open Records*, 75 A.3d 453, 467 (Pa. 2013). This Court consistently holds an appeals officer has discretion in the manner in which she develops the record. *Highmark Inc. v. Voltz*, 163 A.3d 485 (Pa. Cmwlth. 2017) (*en banc*); *Dep't of Educ. v. Bagwell*, 114 A.3d 1113 (Pa. Cmwlth. 2015). Although an appeals officer may request additional evidence or explanation from the parties, it is not incumbent upon OOR to do so.

A detailed exemption log offers sufficient proof of an exemption, especially where the information in the log is bolstered with averments in a verified statement or attestation. *McGowan v. Dep't of Envtl. Prot.*, 103 A.3d 374 (Pa. Cmwlth. 2014). While the combination of an attestation and an exemption log may constitute better evidence, an attestation "found to be relevant and credible may provide sufficient evidence in support of a claimed exemption." *Heavens v. Dep't of Envtl. Prot.*, 65 A.3d 1069, 1073 (Pa. Cmwlth. 2013). Before OOR, "affidavits are the [primary] means through which a governmental agency ... justifies nondisclosure of the requested documents under each exemption." *Id.*

In this case, the University relied solely on attestations to substantiate the asserted exceptions, despite that Requester asked for an exemption log in its appeal to OOR. In support of its contention that OOR erred in not granting its request for such a log, Requester cites *Vista Health Plan, Inc. v. Department of Human Services* (Pa. Cmwlth., No. 660 C.D. 2017, filed May 31, 2018), 2018 WL 2436329 (unreported).[6] There, this Court held that OOR had the authority to request an exemption log when

---

[6] Unreported cases may be cited for their persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

the affidavits or other documentary evidence contained insufficient facts to assess the exemptions. Importantly, despite OOR deeming the evidence before it sufficient proof for the exception (Section 708(b)(26) of the RTKL relating to requests for proposals), we concluded the record was insufficient for this Court to ensure only protected information was withheld. As a consequence, we vacated and remanded to OOR to reconsider the asserted exception with the benefit of an exemption log. *Id.*

As in *Vista*, in this case, OOR deemed the attestations sufficient to prove the asserted exceptions by a preponderance of the evidence, with the exception of Section 708(b)(1). Here, we are able to review the entirety of the record, including the hundreds of responsive records disclosed, in conjunction with attestations to the salient facts. But unlike *Vista*, we do not discern so little information regarding the content of responsive records to preclude our review of the asserted exceptions.[7]

With the benefit of the University's production of more than 450 records, the protected status of certain redactions may be discerned. *Mission Pa., LLC v. McKelvey*, 212 A.3d 119 (Pa. Cmwlth. 2019), *appeals granted in part*, *McKelvey v. Dep't of Health* (Pa., Nos. 393, 394, 396 MAL 2019, filed Jan. 28, 2020). For example, redaction of names or email addresses in emails are protected as personal identifiers under Section 708(b)(6). *See, e.g.*, R.R. at 107a (redacting email addresses of parents and students receiving services). Thus, it is unnecessary to remand to OOR to require an exemption log only as to personal identifiers and disability status when the redactions are clear from review of the redacted records themselves.

_____

[7] Requester mischaracterizes our decision in *Vista* as requiring an agency's submission of an exemption log to meet its burden of proof. However, in *Vista*, we deemed the record insufficient for adequate appellate review so a remand was necessary to aid our understanding of the case.

10

We reject Requester's criticism of the quality of the attestations submitted; the University identified the type of record, like policy drafts, and submitted a statement that the record was withheld or redacted.[8] In context and based on the facts in the attestations and the description in the verified position statement of redactions, we conclude that the University provided sufficient evidence to meet its burden of proof that the drafts it withheld are protected by Section 708(b)(9).[9]

Additionally, we consider the evidence sufficient to withhold criticisms or evaluations of an employee under Section 708(b)(7) of the RTKL. However, OOR concluded that "the University has demonstrated that *some* records contain exempt employee information." Final Determination at 15. In the interest of clarity, we confirm the University only established that evaluations and written criticisms of employees are protected by this exception.[10]

In sum, the record is adequate to permit our review of the merits.

### 2. Substance – RTKL Exceptions

Records in an agency's possession are presumed public unless exempt under an exception in Section 708(b) of the RTKL, a privilege, or another law. Section 305(a) of the RTKL, 65 P.S. §67.305(a). The RTKL places the burden of

---

[8] Ideally, since the agency bates-labeled responsive records, the supporting attestations would refer to documents by bates-label or other details. Had the University taken that additional step in this case, Requester may have appealed fewer issues or potentially not appealed at all.

[9] Requester does not seek disability status or identifiers of those with disabilities protected by Section 708(b)(5) and (b)(6) in the appeal, and such information is properly protected.

[10] Requester also did not question the adequacy of the evidence the University submitted regarding Section 708(b)(7) in its affidavit. *See* Certified Record at 647-51 (Schackner Affidavit).

11

proving asserted exemptions squarely on an agency. A party must prove asserted RTKL exceptions apply "by a preponderance of the evidence." Section 708(a)(1) of the RTKL, 65 P.S. §67.708(a)(1). "A preponderance of the evidence standard … is tantamount to a more likely than not inquiry." *California Univ. of Pa. v. Schackner*, 168 A.3d 413, 417 (Pa. Cmwlth. 2017) (citation omitted). Consistent with the presumption of openness, exceptions are narrowly construed. *McGowan*.

### (a) Section 708(b)(10) – Predecisional Deliberations

First, we consider whether OOR erred in protecting communications between the University and its contractor, ABI, under the predecisional deliberative exception in Section 708(b)(10)(i)(A) of the RTKL. This exception protects records that reflect:

> The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. §67.708(b)(10)(i)(A). To establish this exception, the University must show the record: "(1) is internal to [the] agency; (2) contains information that is deliberative; and (3) reflects deliberations that occurred prior to a decision," *i.e.,* "predecisional."[11] *California Univ. of Pa.*, 168 A.3d at 420 (citation omitted). All three elements must be met. *Carey*.

---

[11] We discern no merit in Requester's contention that evidence supporting this exception must state the date of the decision. As long as it is clear from the evidence that the information pre-dated a decision at issue, the predecisional component is met.

12

The "internal" element is met "'when [records] are maintained internal to one agency or among governmental agencies.'" *Id.* (citation omitted). This Court recently held the predecisional deliberative exception may protect records shared with a third-party contractor. *See Finnerty v. Dep't of Cmty. & Econ. Dev.*, 208 A.3d 178 (Pa. Cmwlth. 2019), *appeal granted*, *Chester Water Auth. v. Dep't of Cmty. & Econ. Dev.* (Pa., No. 44 EAP 2019, Dec. 31, 2019). In *Finnerty*, we reasoned that information shared for deliberation with an outside contractor retained by an agency qualifies as "internal" because the contractor acts as the agent of the agency. *Id.*

The University hired ABI to coordinate disability services on its behalf. As the contractor hired to perform these services, ABI is an agent of the University integral to its function such that the internal element of the predecisional deliberative exception is met. *Finnerty*. OOR did not err in so concluding.

Having reviewed the three prerequisites for this exception, we apply it to the three categories of communications with ABI that the University withheld. These categories are comprised of emails exchanged: (1) before its hire, regarding attendant care services; (2) after its hire, regarding attendant care policy and services; and (3) after its hire, regarding the location of ABI.

Records responsive to the Requests pertain to two operative decisions: (1) the hire of ABI in September 2018; and (2) coordination of attendant care services after ABI's hire. Both categories of records are deliberative in that the first category pertains to deliberations regarding the hire of ABI and the second category pertains to deliberations regarding the provision of services through ABI. Both categories of

13

records are also predecisional to the extent they pertain to the operative decision. However, it is not clear that both categories meet the "internal" requirement.

In its OOR appeal, Requester acknowledged that responsive records would include communications regarding the change in the University's attendant care policy with care coordinator ABI. *See* R.R. at 571a. These communications deliberating policy are deliberative in nature and occurred prior to determining the policy and services. Once ABI became the University's agent in providing attendant care services, these records also became internal.

The September Request sought records *post-dating* the hire of ABI as attendant care coordinator for the University. Communications between ABI and the University regarding provision of services after ABI's hire qualify as internal because they involve deliberation of the services being provided. *Finnerty*.

The March Request, however, sought records *pre-dating* ABI's hire. Communications among University employees and agents regarding the outsourcing of attendant care services to prospective contractors (like ABI) are protected under this exception as they reflect internal deliberations of the hiring decision *pre*-hire. By contrast, communications to and from the prospective contractors are not similarly exempt since they are not "internal" until the contractor becomes an agent.

Accordingly, emails between ABI and the University exchanged before its hire do not meet the internal prerequisite for this exception. In applying *Finnerty* to protect emails to/from ABI before it became the University's agent, OOR erred.

14

Notwithstanding this error, we uphold OOR's legal conclusion that this exception applies to emails to/from ABI post-hire because communications with a contractor meet the internal element. Therefore, we affirm OOR with modification to require disclosure of emails exchanged with ABI before its hire (*i.e.*, not internal).

### (b) Section 708(b)(17) - Noncriminal Investigations

Next, we address Requester's contention that OOR erred as a matter of law in determining that the University established it performed a noncriminal investigation such that records related to its investigation are protected by Section 708(b)(17) of the RTKL. Because Ronald Wilson was the Title IX Coordinator for the University and his name was both a keyword and among the sender/recipients in the search, records involving his investigation of Title IX matters were responsive.

Section 708(b)(17) of the RTKL protects records "related to a noncriminal investigation …." 65 P.S. §67.708(b)(17). In the RTKL context, this Court defines an "investigation" as a "systematic or searching inquiry, a detailed examination, or an official probe." *Dep't of Health v. Office of Open Records*, 4 A.3d 803, 811 (Pa. Cmwlth. 2010). "[T]he agency … must show that a searching inquiry or detailed examination was undertaken as part of an agency's official duties. Stating that an investigation occurred [without more] ... does not suffice." *Dep't of Educ. v. Bagwell*, 131 A.3d 638, 659-60 (Pa. Cmwlth. 2015) (citations omitted).

Requester maintains that an investigation is not undertaken as part of an agency's "official duties" unless there is express statutory authority prescribing the investigative power. Expressly conferred powers pursuant to legislation is but

15

one illustration of the "official duties" part of this analysis. *Sherry v. Radnor Twp. Sch. Dist.*, 20 A.3d 515 (Pa. Cmwlth. 2011).

The University must comply with statutes other than its enabling statute and has authority to perform the requisite investigations as part of its compliance. Here, that entails an investigation into sexual misconduct allegations that may relate to a staff member or administration of disability services to which the students are entitled. Construing the exception as narrowly as Requester suggests would mean that highly sensitive investigations of sexual misconduct in our educational institutions are not protected merely because the enabling statute of the agency did not enumerate investigations into sexual misconduct, or other matters with which federal compliance is required, as part of the agency's duties. That would yield an unreasonable result.

There is no case law of which this Court is aware that holds the investigative power must be affirmatively conferred in an agency's enabling statute in order for an agency's investigation to qualify as one within its official duties. *See Pa. Liquor Control Bd. v. Beh*, 215 A.3d 1046, 1061 n.22 (Pa. Cmwlth. 2019) (explaining "official duties" required for Section 708(b)(17) flows from an agency's authority to act). This is an unreasonably narrow construction of the phrase "official duties" when not all of an agency's powers are explicitly conferred. To the contrary, long-standing precedent recognizes that agencies exercise authority through necessarily implied powers. *Pa. Human Relations Comm'n v. St. Joe Minerals Corp., Zinc Smelting Div.*, 382 A.2d 731 (Pa. 1978). This includes investigations undertaken as part of its compliance with other laws, like Title IX, 20 U.S.C. §§1681-1683.

16

As a member of the State System of Higher Education governed by Section 2002-A(a) of the Public School Code of 1949, 24 P.S. §20-2002-A(a),[12] the University has the authority and the duty to investigate sexual misconduct allegations. The University must comply with Title IX which protects students and faculty from discrimination and harassment based on sex. *Cf. Harden v. Rosie*, 99 A.3d 950 (Pa. Cmwlth. 2014). This federal statutory scheme provides the source of authority for this noncriminal investigation. *But see California Univ. of Pa.* (holding university's investigation of collapse of parking garage was not within official duties such that this exception protected records related to its investigation).

Here, "the University withheld records related to Title IX investigations conducted by Ronald Wilson, who is the University's former Title IX Coordinator. Any records related to the University's investigations into allegations of sexual misconduct, harassment, or discrimination constitute *records* related to noncriminal investigations, and are exempt from disclosure under the exemption to the RTKL." R.R. at 647a (emphasis added). Upon OOR's request for additional clarification, (Certified Record at 670), Counsel submitted a second attestation confirming the investigation into student allegations of sexual misconduct, sex discrimination and sexual harassment, and her decision to withhold records related to that investigation. R.R. at 652a. She also verified the facts in her position statement, including that the records related to the University's investigation into a student's allegations were withheld, some of which involved University employees, and so were also *withheld* under Section 708(b)(7) (protecting certain personnel records). R.R. at 649a. Such records were responsive because "Ronald Wilson" was a keyword in the Requests.

---

[12] Act of March 10, 1949, P.L. 30, *as amended*, added by the Act of November 12, 1982, P.L. 660, 24 P.S. §20-2002-A(a).

Also in support of this exception, Wilson attested to his role as former Title IX Coordinator, which included investigating formal complaints in accordance with federal law. R.R. at 651a. He confirmed the receipt of formal complaints of sexual misconduct during the relevant timeframes, and the investigation process (conducting interviews and collecting documentation) related to those complaints.

These attestations substantiate the University's investigation into sexual misconduct claims. The University's investigation into sexual misconduct claims qualifies as an official inquiry for purposes of the noncriminal investigative exception. *Beh*; *Dep't of Health*. Because the tenets for establishing the noncriminal investigation are met, we affirm OOR's application of Section 708(b)(17).[13]

### (c) Section 708(b)(1)(i) (Loss of Funds under FERPA)

Section 708(b)(1)(i) of the RTKL protects "[a] record, the disclosure of which <u>would result in the loss</u> of Federal or State funds by an agency or the Commonwealth[.]" 65 P.S. §67.708(b)(1)(i) (emphasis added). The University argues that it withheld or redacted records asserting they were "education records" under FERPA such that their disclosure might jeopardize its federal funding.

FERPA defines "education records" as "those records, files, documents, and other materials which – (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. §1232g(a)(4)(A). We recently held

---

[13] We are particularly reluctant to order disclosure in these circumstances where the agency acted in good faith by cooperating throughout the proceedings and exercising diligence in providing responsive records as soon as practicable on a rolling basis.

that a record does not qualify as an education record for FERPA/loss of funding purposes unless it directly relates to a student. *Central Dauphin Sch. Dist. v. Hawkins*, 199 A.3d 1005 (Pa. Cmwlth. 2018).

Qualifying education records are also customarily maintained in a student's academic file. This Court explained that the "maintained by" aspect of the definition entails more than mere possession by an educational institution. *See W. Chester Univ. of Pa. v. Rodriguez*, 216 A.3d 503 (Pa. Cmwlth. 2019) (holding emails of university were not education records under FERPA). This means there must be some formality to maintenance, such as monitoring or "logging requests for access" to the records. *Id.* at 509. Consistent with federal case law, we found that emails stored in the ordinary course of business are not, "without more, maintained by the institution." *Id.* (following the progeny of *Owasso Indep. Sch. Dist. v. Falvo*, 534 U.S. 426 (2002)).

Also, the *potential* loss of federal funding is not a basis for imposing this exception. *Hawkins.* In *Hawkins*, we explained "Section 708(a)(1) requires more than the mere possibility of a loss of federal funds." *Id.* at 1016. Further, we recognized that, under FERPA, the loss of federal funding "is reserved for schools that have a 'practice' or 'policy' of releasing education records." *Id.*

Here, the University did not establish that the records at issue are maintained by the University in files directly related to students under FERPA. Moreover, the University also alleged only the *possibility* of the loss of federal funding; this does not suffice. *Id.* Accordingly, OOR did not err in holding the

University did not meet its burden to prove that Section 708(b)(1)(i) applied. As a result, OOR properly directed disclosure of records withheld or redacted under FERPA that were not otherwise exempt under another proven exception.

## IV. Conclusion

We discern no abuse of discretion by OOR in developing the record. On the merits, for the foregoing reasons, we affirm OOR's Final Determination with modification to confirm disclosure of the records OOR deemed public, as well as emails exchanged between ABI and the University before its hire.[14] *See Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435 (Pa. Cmwlth. 2011) (affirming OOR's order with modification to alter disclosure of records by agency). The University shall disclose records in accordance with the Final Determination as modified herein, and shall confirm that the records disclosed comply with the disclosure order as modified as set forth in the following order.

_____
J. ANDREW CROMPTON, Judge

---

[14] However, we caution OOR that when an agency submits records in redacted form, and alludes to additional records in its supporting statements and argument, it is incumbent upon OOR to identify the records subject to disclosure, whether by bates-label or otherwise, in its determination. *See Office of the Governor v. Davis*, 122 A.3d 1185 (Pa. Cmwlth. 2015). According to Counsel, the University identified 3,168 potentially responsive records, yet the record is not clear how many of those she deemed actually responsive. On this record, it is not evident that the 458 bates-labeled pages comprise all responsive records, and the University's partial denial stated that an unspecified number of documents were withheld. R.R. at 396a. Therefore, we affirm OOR's Final Determination as modified to require the disclosure of records to which an exception did not apply paired with a verified or sworn statement by Counsel that the records disclosed pursuant to the Final Determination comprise the entirety of records withheld under FERPA and, as to the predecisional deliberative exception, those records that did not qualify for protection because they were not internal or not deliberating attendant care services. Also, the statement shall confirm the disclosure of all records responsive to the Requests, to which an exception was not established, that the University withheld based on its specificity challenge.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bill Schackner and The Pittsburgh      :
Post-Gazette,      :
             Petitioners      :
     :
       v.      :      Nos. 785 C.D. 2019
     :            786 C.D. 2019
Edinboro University,      :
             Respondent      :


Edinboro University of Pennsylvania,      :
             Petitioner      :
       v.      :      No.   809 C.D. 2019
     :
Bill Schackner and The      :
Pittsburgh Post-Gazette,      :
             Respondents      :

# **O R D E R**

**AND NOW**, this 27th day of April 2020, the final determination of the Office of Open Records (OOR) is **AFFIRMED AS MODIFIED** to require disclosure by Edinboro University of Pennsylvania (University) to Requester Bill Schackner of The Pittsburgh Post-Gazette of communications to and from the University's contractor, A Bridge to Independence (ABI), before it became the University's agent as explained in the accompanying opinion. OOR's final determination and disclosure order is affirmed in all other material respects.

**AND FURTHER**, the final determination is **SUPPLEMENTED** to require the University to submit a sworn or verified statement of legal counsel corresponding to the records deemed subject to disclosure by OOR, as modified by this Court. The statement shall confirm the general content of the records disclosed, including that the disclosure contains the following, provided that the records were

not otherwise protected by another proven exception: all records the University withheld or redacted under Section 708(b)(1) of the Right-to-Know Law (RTKL);[1] and all communications exchanged between the University and ABI that the University withheld under Section 708(b)(10) of the RTKL *before* ABI became an agent of the University, and those exchanged after when communications concerned the contractor's location.  The verified or sworn statement shall also confirm the disclosure includes any records withheld based on the University's specificity challenge to which an asserted exception was not upheld by OOR, and affirmed as modified by this Court.

 

 

_____
J. ANDREW CROMPTON, Judge

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.