### The CITY OF PHILADELPHIA

v.

### The PHILADELPHIA INQUIRER, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 15, 2012.

Decided July 25, 2012.

---

10. Mass. Gen. Law, ch. 66, §§ 1–18.

Michael E. Baughman, Philadelphia, for appellant.

Eleanor N. Ewing, Philadelphia, for appellee.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY President Judge PELLEGRINI.[1]

The Philadelphia Inquirer (*The Inquirer*) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) granting the City of Philadelphia's (City) appeal from the decision of the Office of Open Records (OOR) and vacating the decision of the OOR directing the City to release certain records consisting of calendars of public officials to *The Inquirer* under the Right–to–Know Law (RTKL).[2] For the reasons that follow, we affirm the trial court's decision.

In 2009, Jeff Shields (Shields), a reporter for *The Inquirer*, sent two requests to the City under the RTKL. The first request was addressed to the City's Office of the Mayor and requested "copies of the Mayor's daily schedule" from June 1, 2009, up through the time the request was fulfilled and was to include "appointment

---

**1.** This opinion was reassigned to the authoring judge on June 5, 2012.

**2.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

logs, calendars, or whatever names the Mayor's office gives its daily itinerary, including public events and private meetings. To be clear, this would be far more inclusive than the daily public schedule put out by your office." (Reproduced Record at 29a.) The second request was addressed to the Philadelphia City Council and requested copies of "all 17 City Council members' daily schedules" for the same period of time. (Reproduced Record at 31a.) In an attempt to clarify the request, an email was sent by the City's Law Department to Shields asking if the request sought an "official schedule[s]" or "something along the lines of their personal desk calendars." (Reproduced Record at 33a.) Shields responded that he "was looking for the schedule generated by the Mayor and each Council office that details any appointments involving city business or public appearances attended in their role as an elected official." *Id.* He stated that he did not seek personal appointments but did seek "private meetings with lobbyists, oth-

er public officials, or members of the public, to name a few." *Id.* Shields confirmed that he sought any paper calendars kept "if that's how the office organizes the daily appointments." *Id.*

The City's Law Department responded by denying the two requests citing in each instance the "working papers" exemption,[3] the "pre-decisional deliberations/strategy exemption,"[4] and the "personal security" exception."[5] The denial was also based on Section 708(b)(2), 65 P.S. § 67.708(b)(2),[6] related to law enforcement and public safety activities. *The Inquirer* appealed both denials to the OOR, which assigned the matter to an OOR Appeals Officer who, in turn, directed the City to supplement the record to support its assertion that the records were exempt from disclosure. The City submitted the affidavit of Charles Ramsey, Police Commissioner for the City, to support its arguments regarding the "personal security" and "public safety" re-

---

3. Section 708(b)(12) of the RTKL, 65 P.S. § 67.708(b)(12), provides in pertinent part, that among items exempt from access by a requester are:

Notes and working papers prepared by or for a public official or agency employee used solely for that official's or employee's own personal use, including telephone message slips, routing slips and other materials that do not have an official purpose.

4. Section 708(b)(10)(i)(A) and (B) of the RTKL, 65 P.S. § 67.708(b)(10)(i)(A) and (B), provides in pertinent part, that among items exempt from access by a requester is a record that reflects:

(A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research,

memos or other documents used in the predecisional deliberations.
(B) The strategy to be used to develop or achieve the successful adoption of a budget, legislative proposal or regulation.

5. Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii), provides in pertinent part, that among the items exempt from access by a requester is a record, the disclosure of which:

would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual.

6. 708(b)(2) of the RTKL provides, in pertinent part, that among the items exempt from access by a requester is:

A record maintained by an agency in connection with the military, homeland security, national defense, law enforcement or other public safety activity that, if disclosed would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity or a record that is designated classified by an appropriate Federal or State military authority.

lated to the Mayor's calendar. Specifically, the Commissioner attested to his professional judgment that release of the Mayor's full daily calendar, including past schedules, "would be reasonably likely to result in a substantial and demonstrable risk to the personal security of the Mayor and the police detail assigned to protect him, including the risk of physical harm. An individual determined to harm or otherwise confront the Mayor could use the past schedules to discern certain patterns of travel, as well as the security procedures used to protect the Mayor." (Reproduced Record at 129a.)

The OOR issued a final determination granting the two appeals finding that the daily schedules requested by *The Inquirer* did not qualify as work papers under Section 708(b)(12) because they were not prepared solely for the Mayor's personal use, were provided to the police officers to coordinate the Mayor's protection, pertained to official business and official appointments of the Mayor and/or City Council Members and were not temporary records. "Rather, the daily schedules as described are accessible by the public officials' offices, staffs, and in the Mayor's case, security detail, to keep track of the public officials' daily activities." (OOR's October 13, 2009 decision at 5a.) The OOR also found that because the City did not provide evidence regarding City Council Members' maintenance of their personal calendars and whether they were shared with, accessed or used by any City staff, the City failed to meet its burden of proof to show that the exception applied to them. The OOR further found the daily schedules were not protected under Section 708(b)(10) as "predecisional deliberations/strategy" because the City did not

submit any evidence to show that the daily schedules were part of the City's internal communications or decision-making processes.

As for Section 708(b)(2) relating to law enforcement and public safety activities, the OOR concluded that the Mayor's schedule was not in and of itself a law enforcement record. Additionally, the fact that the request sought past daily schedules was significant because absent proof of a pattern, which the City did not assert, the information relayed in the daily schedules regarding the Mayor's prior activities or meetings did not reveal information people could use to target or threaten the Mayor. Finally, regarding Section 708(b)(1)(ii) relating to the personal security exception, the OOR explained that under the RTKL, the standard required the City to prove that the release of the requested daily schedules would be "reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." Because the City only alleged that a threat "could" exist, which was insufficient to establish the personal security exception, it could not protect the Mayor's or City Council Members' daily schedules.[7]

The City appealed to the trial court and upon review of the record, the trial court found that the City failed to provide the information necessary for the OOR to have conducted a thorough and appropriate review. Previously, the City had only submitted one affidavit from the City Police Commissioner regarding the Mayor. The trial court ordered the City to submit by affidavits the factual and legal grounds to support the exemptions claimed, which it

---

7. The OOR determined that pursuant to Section 705 of the RTKL, 65 P.S. § 67.705, the records sought had to be in existence at the time of a request. Therefore, only the Mayor's and City Council Members' past daily schedules from June 1, 2009, through July 14, 2009, were properly sought. The parties did not dispute this on appeal.

did—two affidavits were submitted on behalf of the Mayor and two affidavits were submitted for each City Council Member.[8]

 Relying on *Bureau of National Affairs, Inc. v. United States DOJ*, 742 F.2d 1484 (D.C.Cir.1984), a case under the Federal Freedom of Information Act, 5 U.S.C. § 552(b)(5),[9] the trial court determined that the Mayor's calendar and the 17 City Council Members' calendars were exempt under the Section 708(b)(12) working papers exemption under the RTKL. It did so because the Mayor and the City Council Members were elected public officials who did not work for one agency and the calendars were for their personal use. The trial court did not address the predecisional exception or personal security exception raised by the City that calendars were not disclosable. *The Inquirer* then filed an appeal with this Court.[10]

*The Inquirer* contends that the trial court erred in finding that the daily sched-

---

**8.** The first set of affidavits stated the following:

 a. The requested records, which consist of _____ daily personal schedule, contain entries which reflect the internal, predecisional deliberations of _____ office, as I understand this term.
 b. These select records, which may contain more than just factual information, reflect the deliberative process used by _____ office.
 c. These select records also reflect the strategy used or to be used to develop or achieve successful adoption of a budget or legislative proposal, and were created prior to any decision.
 d. The records are internal to _____ office, and are not disseminated or available outside of _____ office.
 Paragraph (d) of the Mayor's affidavit had the addition, "..., beyond what is necessary to ensure the security of the Mayor."
 The second set of affidavits stated the following:

 a. The requested records, which consist of _____ daily personal schedule, were created for _____ own personal use, and are solely for personal convenience in scheduling _____ daily activities. These records contain a mix of personal and business appointments, there is no official purpose for their creation and are not an official document or record of _____ schedule.
 b. These records were created with the intent to retain them solely with _____ office, and were never intended for general distribution.
 c. Beyond the requirement that these records be trained for the purpose of this litigation, all records such as these have always been retained or disposed of at _____ discretion.
 d. Because of the unofficial nature of these records, as well as the possibility that _____ schedule may change at any given moment, no member of this office relies upon these documents for any aspect of their employment. In instances where _____ schedule changed, the corresponding record entry may not have been updated to reflect this change.
 e. These records are kept on the City of Philadelphia computer system, this is done strictly as a matter of convenience.
 f. Access to these records is limited to select individuals in the _____ office. No one beyond these select individuals may access these records, including anyone from outside this office.
 (Trial court's April 11, 2011 decision at 3–4.) The trial court, in a footnote, observed that "Of the Council Members who submitted affidavits 9 used the city computer system; 2 used a combination of the computer system and paper; 3 used paper only and 2 used Google calendar not integrated with City computer." *Id.*

**9.** 5 U.S.C. § 552(b)(5) deals with the deliberative process/executive privilege, which "protects agency documents that are both predecisional and deliberative." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 183 (3d Cir.2007).

**10.** Our standard of review in a RTKL case is whether an error of law was committed, constitutional rights were violated, or necessary findings of fact are supported by substantial evidence. *Chester Community Charter School v. Hardy ex rel. Philadelphia Newspaper, LLC*, 38 A.3d 1079, 1082 n. 4 (Pa.Cmwlth.2012). Our scope of review is plenary. *Id.*

ules of the Mayor and the City Council Members were exempt under the RTKL's "working papers" exception. The City disagrees and argues that the trial court properly relied on the reasoning in *Bureau of National Affairs*, a case where the District of Columbia Circuit Court found desk appointment calendars to be exempt from disclosure under the federal Freedom of Information Act based on the "purpose for which the document was created, the actual use of the document and the extent to which the creator of the document and other employees acting within the scope of their employment relied upon the document to carry out the business of the agency." 742 F.2d 1484, 1493.

Section 708(b)(12), 65 P.S. § 67.708(b)(12), provides:

> Notes and working papers prepared by or for a public official or agency employee used solely for that official's or employee's own personal use, including telephone message slips, routing slips and other materials that do not have an official purpose.

■ The purpose of the calendars as set forth by the affidavits personal to the Mayor and City Council Members are used for scheduling their daily activities and fall within the "notes and working papers" exception. Under this provision, a public official is not the only person required to prepare or see the calendar because the exception specifically includes within the definition of working papers "papers prepared by or *for* the public official." "Personal" within this definition does not mean that it has to involve a public official's personal affairs—a message slip that his wife called—because those types of documents are not covered by the RTKL, *Easton Area School District v. Baxter*, 35 A.3d 1259 (Pa.Cmwlth.2012); it covers those documents necessary for that official that are "personal" to that official in carrying out his public responsibilities. This is illustrated by defining "routing slips" as "working papers," even those routing slips transmitting documents that may have an official purpose. Much like a calendar, a routing slip may have the subject of the documents transmitted and who is going to receive them, which is similar to a calendar notation of the subject of a meeting and who is going to attend. Moreover, by definition, the routing slip is "personal" to the official even though it is routing public documents. Also akin to a calendar, a telephone message may indicate with whom a person had a "phone meeting"—a constituent or the Governor or an *Inquirer* reporter—yet, by definition, are not considered personal to the official even though in answering those phone calls, the official is carrying out his public office. Just like a telephone message slip and a routing slip, calendars serve a similar purpose and are "other materials" that fall within the notes and working papers exclusion.

The reasoning in *Bureau of National Affairs, Inc.* relied on by the trial court, though decided under the predecisional exception contained in the federal Freedom of Information Act, is helpful in deciding which calendars are personal and which are not under the notes and working papers exception. That case distinguished daily agendas, which were created for the express purpose of facilitating daily activities of a division, which were circulated to all staff for business purposes, from appointment calendars retained solely for the convenience of individual officials and did not have general distribution. After reviewing the affidavits, we agree with the trial court that the requested documents are appointment calendars because they were created solely for the convenience of the Mayor's and City Council Members' personal use in scheduling daily activities and were not circulated outside of the offi-

cial's office. Consequently, the daily schedule/calendar of the Mayor and City Council Members are exempt from disclosure.[11]

Accordingly, the order of the trial court is affirmed.

Judge McCULLOUGH dissents.

### ORDER

AND NOW, this *25th* day of *July,* 2012, the order of the Court of Common Pleas of Philadelphia County is affirmed.

### DISSENTING OPINION BY Judge SIMPSON.

I respectfully dissent. For the following reasons, I would reverse the trial court's determination that the calendars at issue need not be disclosed because they satisfy the statutory definition of excepted "working papers."

Section 708(b)(12) of the Right–to–Know Law (RTKL), 65 P.S. § 67.708(b)(12), provides in pertinent part, with emphasis added, that among items exempt from access by a requester are:

> Notes and working papers prepared by or for a public official or agency employee *used solely for that official's or employee's own personal use,* including telephone message slips, routing slips and other materials that do not have an official purpose.

This exception contains three parts. First, it applies to a certain type of informal records, described as "[n]otes and working papers." *Id.* Second, the exception is dependent on the use to which the records are put. Thus, the records must be "used solely for that official's or employee's own personal use." *Id.* Third, the exception

also relates to the purpose for creation of the informal records. To be exempt from disclosure the records must "not have an official purpose," like telephone message slips and routing slips. *Id.* It is not important who creates the record, because even those informal records created by another "for" the official may qualify. *Id.*

It is clear that almost all of the calendars in question are used by a City official *and* a small number of other people in his or her "office." For example, according to Clarence D. Armbruster, Chief of Staff to the Mayor, he uses the Mayor's calendar in scheduling the Mayor's daily activities, and "[a]ccess to these records is limited to select individuals in the Mayor's office." Reproduced Record (R.R.) at 217a–18a. Similarly, according to the affidavit of Anne Kelly King, Chief Accounting Officer for City Council, the calendar is used to schedule the Council President's daily activities, and access to the calendar is limited to three unidentified individuals in the "office." R.R. at 221 a–22a. Similar averments are made as to the other responding members of City Council. R.R. at 226a, 230a, 234a, 238a, 242a, 246a, 250a, 254a, 262a, 266a, 270a, 274a, 278a, 282a. The exception is Council member Brian O'Neill, who has sole access to his calendar. R.R. at 258a. *The Inquirer* concedes his use is exclusively personal.

The Mayor's calendar invites additional comment, because it is used not only by people in his "office" but also by his security detail from the City Police Department. While this broader use may support other claimed exceptions, it militates against the "solely personal use" requirement of the "working papers" exception.

---

11. Based on the way we have decided the first issue, we need not address *The Inquirer's* remaining issues.

The RTKL expressly requires that informal "working papers" be "used solely for that official's . . . own personal use. . . ." 65 P.S. § 67.708(b)(12). This plain language means that "working papers" are used by the official alone. The City does not contend that the statutory directive is ambiguous, nor does the City offer any argument on statutory construction that could aid in resolving ambiguity. Moreover, the affidavits relating to City Council members do not identify the other individuals beyond the affiants with access to the calendars or explain their relationships to the official.

In short, the City offers no principled way of expanding the plain language of the statute to use beyond that solely personal to the official. Also, it offers insufficient facts to construct a broader paradigm. Therefore, its position is not supportable.

Even were I to accept that a latent ambiguity exists which requires interpretation, I would reject the City's position. This is because the RTKL is remedial legislation; therefore, the exceptions from disclosure must be narrowly construed. *Governor's Office of Admin. v. Purcell,* 35 A.3d 811 (Pa.Cmwlth.2011); *Bowling v. Office of Open Records,* 990 A.2d 813 (Pa. Cmwlth.2010) (*en banc* ), *appeal granted in part,* 609 Pa. 265, 15 A.3d 427 (2011). My analysis is consistent with a narrow construction, while the City's position represents an impermissibly expansive construction of the "working papers" exception.

Further, the City's reliance on a case decided under the federal Freedom of Information Act, *Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice,* 742 F.2d 1484 (D.C.Cir.1984) (ordering release of daily agenda with assistant attorney general's schedule but not separate calendar with personal appointments), is problematic. That case did not address statutory language at all similar to the "working papers" definition which we must apply. The City's reliance on that case therefore appears more oriented to a result than to development of a thoughtful position on the controlling language here.

Based on my analysis of the plain language of the RTKL's "working papers" exception, I must conclude that the trial court's findings regarding personal use by the Mayor and most members of City Council are not supported by substantial evidence. The trial court did not err, however, with regard to the calendar used exclusively by City Council member Brian O'Neill. For all these reasons, I would affirm the trial court as to the calendars of Council member O'Neill, and reverse the trial court as to the other calendars.

Judge BROBSON joins in this dissent.