IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Public Utility :
Commission, :
                      Petitioner :
                                        :
                   v. : No. 514 C.D. 2022
                                        : Submitted: February 24, 2023
Jonathan Nase and Cozen O'Connor :
(Office of Open Records), :
                    Respondents :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE STACY WALLACE, Judge


OPINION BY
JUDGE WALLACE                                FILED: September 8, 2023


The Pennsylvania Public Utility Commission (Commission) petitions for review of the April 26, 2022 final determination of the Office of Open Records (OOR), which granted in part and denied in part the appeal of Jonathan Nase, Esquire and his law firm, Cozen O'Connor (collectively, Nase), and directed the Commission to provide Nase with certain records under the Right-to-Know Law (Law).[1] After careful review, we affirm.

## I. Background

On October 30, 2019, Nase submitted a request form to the Commission, seeking various records related to a water company, Hidden Valley Utility Services,

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

L.P. (Hidden Valley), which he was representing.[2] The Commission issued a letter dated November 5, 2019, invoking a 30-day extension to respond to Nase's request. *See* Section 902(b) of the Law, 65 P.S. § 67.902(b). The Commission subsequently issued a letter dated December 6, 2019, explaining it denied Nase's request in part. Although the Commission provided Nase with some of the records he requested, it asserted others were exempt from disclosure. Pertinently, the Commission cited the "predecisional deliberations" exception at Section 708(b)(10) of the Law, 65 P.S. § 67.708(b)(10), the "notes and working papers" exception at Section 708(b)(12) of the Law, 65 P.S. § 67.708(b)(12), and the attorney-client privilege.

Nase appealed to OOR, arguing the Commission partially denied his records request without sufficient explanation and failed to redact responsive records when possible. He argued OOR should order the disclosure of the records or, in the alternative, direct the Commission to provide a privilege log, so that it could conduct *in camera*[3] review before ruling on his request. The Commission responded with an

---

[2] In relevant part, Nase requested:

> 1. Any e-mails or other documents to or from a Commissioner, or any member of a Commissioner's staff, mentioning Hidden Valley . . . during the period 2013-present.
>
> . . . .
>
> 3. Any e-mails or other documents to or from any employee in the Bureau of Technical Utility Services mentioning Hidden Valley . . . during the period 2013-present.

Reproduced Record (R.R.) at 17a.

[3] The phrase "*in camera*" may confuse some readers. Although a person might associate cameras with less privacy or secrecy, the opposite is true of "*in camera*" court proceedings. "*In camera*" is a Latin phrase meaning "in a chamber" and generally refers to actions a court performs privately **(Footnote continued on next page…)**

2

affidavit from its Secretary, Rosemary Chiavetta (Chiavetta), who averred she performed a thorough search and reviewed all responsive records. According to Chiavetta, the records the Commission withheld were exempt from disclosure because they contained legal advice by Commission attorneys, discussion of "proposed courses of Commission action," and preliminary drafts of Commission documents. R.R. at 109a-10a, 156a-57a; *see also* R.R. at 174a-75a. Chiavetta averred some withheld records contained "notes, memos, activity summaries, calendar deadlines for Commission proceedings, and internal compilations of water and wastewater data . . . to document meetings and other activities associated with pending water and wastewater matters." R.R. at 110a, 157a; *see also* R.R. at 175a. The Commission asserted a privilege log and *in camera* review of the withheld records were unnecessary because it had sufficiently explained its basis for nondisclosure with Chiavetta's affidavit.

OOR directed the Commission to produce a privilege and exemption log. After submission of the log, OOR concluded *in camera* review was warranted. The COVID-19 pandemic impaired OOR's ability to conduct *in camera* review, however, so it stayed Nase's appeal by order dated April 9, 2020. OOR lifted the stay about a year later, on March 30, 2021, and the Commission submitted the withheld records for *in camera* review on June 1, 2021, along with a certification from Chiavetta and an updated log with Bates numbering.

On April 26, 2021, OOR issued its final determination, granting in part and denying in part Nase's appeal. OOR first considered whether disputed records were exempt from disclosure under the "notes and working papers" exception. It

---

or outside of public view. *See* Black's Law Dictionary 909 (11th ed. 2019). Here, "*in camera*" describes the method used to review the Commission's disputed records. The Commission submitted the records to OOR, which reviewed them privately, without providing access to Nase.

3

described the records as "e[-]mails and attachments, exchanged between at least two and generally many individuals," which contained "discussions or edits to drafts, or compilations of data being provided to other agency employees." R.R. at 253a-54a. OOR added that some of the e-mails were "summaries and lists of tasks being assigned or that have been assigned as well as deadlines to complete said tasks." *Id.* at 254a. As the Commission failed to demonstrate the records were "personal notes of an employee, not shared with others and used for their sole use," OOR reasoned, every record withheld solely under the "notes and working papers" exception was subject to disclosure. *Id.* at 255a.

OOR then turned to records the Commission withheld under the "predecisional deliberations" exception. It reasoned records containing "summaries of the background and procedural postures of the cases which recommend proposed courses of actions" were exempt from disclosure, as were records "containing drafts of press releases, orders in the cases and other similar records," where those records included "notes, questions and proposal[s]." R.R. at 258a. OOR noted several of the records were e-mails in which the Commission's Office of Administrative Law Judge asked for and received "technical assistance on a case," which were also exempt. *Id.* at 259a. It explained some or all the remaining records were subject to disclosure because they contained "purely factual information" or failed to "identify any particular decision being deliberated." *Id.* at 258a. OOR detailed the necessary redactions and disclosures at length. *See id.* at 259a-62a.

Finally, OOR addressed records withheld under the attorney-client privilege. OOR concluded various records were exempt from disclosure to the extent they included legal advice, requests for legal advice, or "drafts of documents prepared by an attorney for their client." R.R. at 264a-66a. OOR detailed records it concluded

4

were not exempt because they did not meet these requirements or merely contained "factual data." *See id.* Based on all the above, OOR directed the Commission to provide Nase with records subject to disclosure within 30 days. *Id.* at 266a.

The Commission filed a petition for review in this Court. The Commission explains it has disclosed some of the records subject to OOR's final determination and is only appealing with respect to a subset of those records.[4] Commission's Br. at 8-9. It lists 23 records or portions thereof, which are purportedly exempt from disclosure under the "notes and working papers" exception, and 11 records or portions thereof, which are purportedly exempt under the "predecisional deliberations" exception. *Id.* at 13-14, 28. The Commission also asserts a portion of one record is exempt under the attorney-client privilege. *Id.* at 39.

## II. Discussion

When this Court reviews OOR's final determination regarding public records of a state-level agency, it serves as the ultimate fact-finder and conducts *de novo* review, meaning it owes OOR no deference. *Am. C.L. Union of Pa. v. Pa. State Police*, 232 A.3d 654, 662-63 (Pa. 2020). Although we need not defer to OOR's determination, we may adopt its factual findings and legal conclusions when appropriate. *Id.* (quoting *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013)). We may also expand the record to fulfill our statutory fact-finding role. *Id.* at 663 (citing *Bowling*, 75 A.3d at 474).

The Law provides a means to request the "public records" of Commonwealth and local agencies. *See* Section 102 of the Law, 65 P.S. § 67.102. A "public record" is a "record" of a Commonwealth or local agency that does not fall under one of the Law's exemptions; is not exempt under Federal or State law or regulation, or under

---

[4] OOR submitted the disputed records to this Court on July 25, 2022, and we have performed our own *in camera* review in deciding this case.

5

a judicial order or decree; and is not protected by a privilege. *Id.* Importantly, the agency bears the burden of proving a record is exempt from disclosure by a preponderance of the evidence. *Cal. Univ. of Pa. v. Schackner*, 168 A.3d 413, 417 (Pa. Cmwlth. 2017) (quoting *Brown v. Pa. Dep't of State*, 123 A.3d 801, 804 (Pa. Cmwlth. 2015)).[5] We must narrowly construe the Law's exceptions consistent with its remedial nature and goal of promoting government transparency. *Cal. Borough v. Rothey*, 185 A.3d 456, 465 (Pa. Cmwlth. 2018) (quoting *Off. of Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015) (*en banc*)).

## A. The "Notes and Working Papers" Exception

In its first issue on appeal, the Commission challenges OOR's determination that none of the records it withheld were exempt from disclosure under the "notes and working papers" exception. Section 708(b)(12) of the Law exempts from disclosure "[n]otes and working papers prepared by or for a public official or agency employee used solely for that official's or employee's own personal use, including telephone message slips, routing slips and other materials that do not have an official purpose." 65 P.S. § 67.708(b)(12). Case law interpreting the "notes and working papers" exception is limited. This Court has held handwritten, personal notes are exempt, where those notes were not shared with others and were not taken at the direction of anyone. *See Smith ex rel. Smith Butz, LLC v. Pa. Dep't of Env't Prot.*, 161 A.3d 1049, 1066-67 (Pa. Cmwlth. 2017). More instructively, the Court has held personal appointment calendars are exempt, even if they are shared within an office. *See City of Phila. v. Phila. Inquirer*, 52 A.3d 456, 459-62 (Pa. Cmwlth. 2012) (*en*

---

[5] A "preponderance of the evidence," standard means the agency must prove "even by the smallest amount" that it is more likely than not that the record is exempt from disclosure. *Povacz v. Pa. Pub. Util. Comm'n*, 280 A.3d 975, 999 n.25 (Pa. 2022); *see also Delaware Cnty. v. Schaefer ex. rel. Phila. Inquirer*, 45 A.3d 1149 (Pa. Cmwlth. 2012).

*banc*). *Philadelphia Inquirer* involved a request for the daily schedules of Philadelphia's Mayor and the members of its City Council, which were accessible by each official's staff and, with respect to the Mayor, his security detail. *Id.* at 457-59. The Court reasoned:

> Under this provision, a public official is not the only person required to prepare or see the calendar because the exception specifically includes within the definition of working papers "papers prepared by or *for* the [sic] public official." "Personal" within this definition does not mean that it has to involve a public official's personal affairs—a message slip that his wife called—because those types of documents are not covered by the [Law]; it covers those documents necessary for that official that are "personal" to that official in carrying out his public responsibilities.

*Id.* at 461 (citation omitted). The Court noted a distinction between "daily agendas . . . created for the express purpose of facilitating daily activities of a division, which were circulated to all staff for business purposes," and "appointment calendars retained solely for the convenience of individual officials," which "did not have general distribution." *Id.* (citing *Bureau of Nat'l Affs., Inc. v. U.S. Dep't of Just.*, 742 F.2d 1484 (D.C. Cir. 1984)). Ultimately, the Court concluded "that the requested documents are appointment calendars because they were created solely for the convenience of the Mayor's and City Council Members' personal use in scheduling daily activities and were not circulated outside of the official's office." *Id.* at 461-62.

According to the Commission, OOR incorrectly concluded only "personal notes that are not shared" were subject to the "notes and working papers" exception. Commission's Br. at 14. The Commission emphasizes the applicability of the exception to the daily schedules at issue in *Philadelphia Inquirer* and insists even shared records can constitute "notes and working papers," so long as they are not

7

circulated outside of an office. *Id.* at 10-11, 14-18. The Commission argues OOR's contrary decision ignores the reality of teams and working groups completing tasks together. *Id.* at 16-18. It discusses each of the withheld records or portions of records, insisting many of them lacked an "official purpose." *See id.* at 18-28. Specifically, the Commission maintains the "notes and working papers" exception applied to Log 3, Bates 1-10, 150-54, 155-68, 169-72, 173-218, 219-29, 230-31, 264-68, 269-75, 276-85, 304-05, 306-07, 318-19, 324-25, 335-36, 337-44, 359-65, 366-67, 372-434, 435-43, 444-51, 452-60, and 464-76. *Id.* at 13-14, 18-28.

It is important to reiterate this Court must construe the Law's exceptions narrowly in the interest of government transparency. *Cal. Borough*, 185 A.3d at 465. The Commission's proposed interpretation of the "notes and working papers" exception, however, is remarkably broad. The Commission is correct that sharing a document within an agency does not necessarily prevent the exception from applying. As this Court observed in *Philadelphia Inquirer*, the exception includes, by its express terms, notes and working papers "prepared . . . for a public official or agency employee" by others. 52 A.3d at 461 (quoting 65 P.S. § 67.708(b)(12)). This does not mean notes exchanged in a team or working group are always exempt. Rather, in *Philadelphia Inquirer*, we recognized the important distinction between records "facilitating daily activities of a division" and those "retained solely for the convenience of individual officials." *Id.*

Here, it is telling that neither the Commission's privilege and exemption log nor Chiavetta's affidavit indicates the withheld records were solely for the convenience of an official or employee. Chiavetta's affidavit states, at most, that records withheld under the "notes and working papers exception" were used "to document meetings and other activities associated with pending water and

8

wastewater matters." R.R. at 175a. Thus, even when disputed records contain what could be described as notes, we cannot readily discern the purpose of those notes. Log 3, Bates 230-31, for example, contains a list of assigned and unassigned tasks directed to a single individual, but it is unclear whether the list was "retained solely for the convenience of" that individual or used to facilitate the daily activities of a team or working group within the Commission. *See Phila. Inquirer*, 52 A.3d at 461; *W. Chester Univ. of Pa. v. Schackner*, 124 A.3d 382, 393 (Pa. Cmwlth. 2015) (citing *Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 375-79 (Pa. Cmwlth. 2013)) ("The evidence must be specific enough to permit this Court to ascertain how disclosure of the entries would reflect that the records sought fall within the proffered exemptions."). The Commission concedes some notes were prepared for or used by a group in its privilege and exemption log or brief on appeal. These include Log 3, Bates 150-54, 169-72, and 304-05. *See* R.R. at 232a; Commission's Br. at 19-22. The sender in Log 3, Bates 155-68 appears to state the attached notes were prepared for a group, explaining how "we," i.e., the group, will benefit from their use.

Additional withheld records or portions of records, including Log 3, Bates 306-07, 318-19, 324-25, 335-36, and 366-67 are e-mails containing discussion and questions between Commission officials and employees. Log 3, Bates 269-75, 276-85, 337-44, 359-65, and 452-60 are primarily e-mails in which an official or employee requests assistance with general work tasks, along with discussion and attachments related to those tasks. The withheld portions of Log 3, Bates 1-10, 173-218, 219-29, 372-434, 435-43, 444-51, and 464-76, meanwhile, are primarily e-mails exchanging what appears to be shared information, such as information in a shared folder or accessible via a shared system. These types of records cannot be described as "notes and working papers" for personal use, along the lines of

9

telephone message slips, routing slips, the handwritten notes in *Smith*, or the daily schedules in *Philadelphia Inquirer*.

Mindful of our duty to construe Section 708(b)(12) narrowly, consistent with the Law's remedial nature and goal of promoting government transparency, *see Cal. Borough*, 185 A.3d at 465, we conclude the Commission has not met its burden of proving the records or portions of records at issue are exempt from disclosure under the "notes and working papers" exception.

## B. The "Predecisional Deliberations" Exception

The Commission's second issue on appeal challenges OOR's interpretation of the "predecisional deliberations" exception. Section 708(b)(10)(i)(A) of the Law exempts from disclosure, in relevant part, "[t]he internal, predecisional deliberations of an agency, its members, employees or officials . . . including predecisional deliberations relating to . . . contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations." 65 P.S. § 67.708(b)(10)(i)(A). To establish the "predecisional deliberations" exception, an agency must show "(1) the information is internal to the agency; (2) the information is deliberative in character; and[ ] (3) the information is prior to a related decision, and thus 'predecisional.'" *Off. of Gen. Couns. v. Bumsted*, 247 A.3d 71, 82 (Pa. Cmwlth. 2021) (quoting *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 381 (Pa. Cmwlth. 2014)).

The Commission argues the withheld records are exempt under the "predecisional deliberations" exception because they reveal the existence of a deliberative process. Commissions' Br. at 11, 29-32. It emphasizes this Court's decision in *McGowan*, where we stated the exception applies to information reflecting "that the agency engaged in the deliberative process; it does not require

that an agency establish that the information itself reveals or discloses deliberative communication." 103 A.3d at 383 (citing *Off. of the Governor v. Scolforo*, 65 A.3d 1095, 1101-02 (Pa. Cmwlth. 2014) (*en banc*)) (emphasis and quotation marks omitted). The Commission argues OOR misinterpreted this exception by requiring withheld records to include deliberative communications rather than simply revealing the existence of a deliberative process. Commission's Br. at 11, 29-32. It discusses each of the records or portions of records withheld under this exception, including Log 1, Bates 66-68, 69-72, 73-75, 453-56, 457-63, 476-80, 1309-11, and 1321-23, and Log 3, Bates 366-67, 452-60, and 483-87. *Id.* at 28, 32-39.

Although the Commission accurately characterizes this Court's statement in *McGowan*, its argument fails to consider the context. *McGowan* involved a request for records from the Department of Environmental Protection (Department), relating to its evaluation of the Perkiomen Creek. 103 A.3d at 377. The Court concluded the disputed records were "deliberative," explaining affidavits from Department staff went "beyond merely listing the subjects involved in its internal deliberations" and instead established "in particular fashion how disclosure of [the disputed records] would reflect the Department's deliberative process." *Id.* at 384. The Court then explained the "predecisional deliberations" exception does not apply to purely factual material, "even if decisionmakers used it in their deliberations," when that material contains no opinions or recommendations.[6] *See id.* at 385-86 (quoting *Commonwealth v. Vartan*, 733 A.2d 1258, 1264 (Pa. 1999) (Opinion Announcing the Judgment of the Court)) (emphasis omitted). As it was unclear whether the

---

[6] *But see McGowan*, 103 A.3d at 387 ("[F]actual material can still qualify as deliberative information if its disclosure would so expose the deliberative process within an agency that it must be deemed exempted; or, in other words, when disclosure of the factual material would be tantamount to the publication of the [agency's] evaluation and analysis.") (citation and quotation marks omitted).

11

records at issue "exclusively contain[ed] deliberative communications" or included "qualitative or statistical data that [could] be severed from the deliberative portions of those documents," the Court remanded to OOR to conduct *in camera* review. *Id.* at 387-88 (citations omitted). Accordingly, contrary to the Commission's argument, we did not conclude in *McGowan* that a record is exempt simply because it shows an agency engaged in deliberations.

The Commission also fails to consider our other decisions. We have explained that, to establish a record is "deliberative in character," and therefore exempt from disclosure under this exception, "an agency must submit evidence of specific facts showing how the information relates to deliberation of a particular decision. Only . . . **confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice** [are] protected as deliberative." *Smith*, 161 A.3d at 1067 (citations and quotation marks omitted; emphasis added). Indeed, it should be expected that public officials and employees of a government agency deliberate in some form before making important decisions. Revealing the existence of a deliberative process may effectively disclose confidential communications, such as a "contemplated or proposed policy or course of action," in certain circumstances, *see* 65 P.S. § 67.708(b)(10)(i)(A), but that will not always be the case.

In this matter, the disputed portions of several records, Log 1, Bates 66-68, 69-72, 73-75, 457-63, and 476-80, are e-mails containing brief discussion of proposed edits to orders and a press release. The disputed portions do not reveal the edits under consideration and, therefore, do not reveal "opinions, recommendations or advice" regarding any particular aspect of the decision. *See Smith*, 161 A.3d at 1067. Similarly, the disputed portions of Log 1, Bates 1309-11, 1321-23, and Log 3, Bates 366-67, are e-mails in which officials or employees schedule a meeting or

12

ask to speak with someone. At most, they establish Commission staff discussed the legal proceedings involving Hidden Valley.

The Commission describes Log 1, Bates 453-56 as e-mails and an attached agenda. Our review indicates the disputed attachment is not the agenda described in the e-mails but a separate spreadsheet, which appears to contain purely factual information. *See McGowan*, 103 A.3d at 385-86. Log 3, Bates 452-60 includes draft documents for the Commission's "budget briefing book," while Log 3, Bates 483-87 includes a draft of the formal memorandum addressed in our discussion of the "notes and working papers" exception. These records are also essentially factual and contain no opinions or recommendations. We see no indication that disclosure of these records would be tantamount to publicizing the Commission's evaluation and analysis. *See id.* at 387-88.

Once again, this Court must construe the Law's exceptions narrowly, including Section 708(b)(10)(i)(A). *See Cal. Borough*, 185 A.3d at 465. Applying a narrow construction to Section 708(b)(10)(i)(A) here, and rejecting the Commission's permissive reading of *McGowan*, we conclude the Commission has not met its burden of proving the records or portions of records at issue are exempt from disclosure under the "predecisional deliberations" exception.

## C. Attorney-Client Privilege

In its third and final issue, the Commission challenges OOR's decision that only part of the e-mail chain at Log 1, Bates 66-68 is exempt from disclosure under the attorney-client privilege. Commission's Br. at 11-12, 39-42. It argues the entire chain should be exempt because it "involves the provision of legal advice regarding the contents of a draft Commission order." *Id.* at 42. To withhold a record based on the attorney-client privilege, an agency must establish the following:

(1) that the asserted holder of the privilege is or sought to become a client; (2) that the person to whom the communication was made is a member of the bar of a court, or his or her subordinate; (3) that the communication relates to a fact of which the attorney was informed by the client, without the presence of strangers, for the purpose of securing an opinion of law, legal services or assistance in a legal matter; and (4) that the claimed privilege has not been waived by the client.

*Cal. Univ. of Pa.*, 168 A.3d at 421 (quoting *Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638, 656 (Pa. Cmwlth. 2015)).

If an agency establishes the first three prongs of the test quoted above, "the burden shifts to the challenger to prove that the privilege was waived under the fourth prong." *Id.* (citing *Davis*, 122 A.3d at 1192). Critically, the attorney-client privilege protects only confidential communications between an attorney and his or her client for the purpose of obtaining or providing professional legal services. *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 52-59 (Pa. 2011). It "does not extend to business advice or protect clients from factual investigations." *Id.* at 52 n.8 (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96 (1981)).

We agree with OOR's interpretation that the disputed portion of Log 1, Bates 66-68 is not exempt from disclosure under the attorney-client privilege because it contains no privileged material. *See* R.R. at 259a. "[T]he purpose of the attorney-client privilege is to encourage clients to provide information freely to their attorneys to allow the attorney to give 'sound and informed advice' to guide their clients' actions in accordance with the law." *Levy v. Senate of Pa.*, 65 A.3d 361, 368 (Pa. 2013) (quoting *Upjohn*, 449 U.S. at 390). Thus, the mere fact a client sought legal advice from an attorney is not generally privileged. *See id.* at 371-72. The focus is instead on whether there will be "a disclosure of information otherwise protected by the attorney-client privilege," such as "the client's motive for seeking counsel, legal advice, strategy, or other confidential communications." *Id.* at 373

(citations omitted). The portion of the record at issue here contains no protected information and reveals little more than the fact someone within the Commission sought and received legal advice. Accordingly, we conclude the attorney-client privilege does not apply.

### III. Conclusion

Based on the foregoing discussion, the Commission has not met its burden of proving the disputed records and portions of records at issue in this matter are exempt from disclosure under the Law's exceptions or the attorney-client privilege. *Cal. Univ. of Pa.*, 168 A.3d at 417, 421. We therefore affirm OOR's April 26, 2022 final determination.

_____
STACY WALLACE, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Public Utility : 
Commission, : 
                Petitioner : 
                 : 
             v. : No. 514 C.D. 2022
                 : 
Jonathan Nase and Cozen O'Connor : 
(Office of Open Records), : 
          Respondents : 

# **O R D E R**

    **AND NOW**, this 8th day of September 2023, the Office of Open Records' April 26, 2022 final determination is hereby **AFFIRMED**.

_____
STACY WALLACE, Judge